**PARADATA COMPUTER NETWORKS, INC., Plaintiff,**

v.

**TELEBIT CORPORATION, Defendant.**

Civ. A. No. 92–72658.

United States District Court,
E.D. Michigan, S.D.

Aug. 27, 1993.

Dennis M. Haffey, Janet E. Frank, Dykema Gossett, Bloomfield Hills, MI, for plaintiff.

Mark A. Stern, Honigman Miller, Detroit, MI, Denise M. Amantea, Palo Alto, CA, for defendant.

## MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

GADOLA, District Judge.

This diversity case arises from a 1991 deal between ParaData Computer Networks, Inc. ("ParaData") and Telebit Corporation ("Telebit"). In the 1991 contract, ParaData sold to Telebit one of its divisions and exclusive rights to a computer networking product known as "ACS." In 1992, plaintiff ParaData brought suit alleging fraud and misrepresentation, breach of contract, tortious interference with business relations, and promissory estoppel. Before the court is defendant Telebit's motion for summary judgment on all four counts.

## I. BACKGROUND FACTS

In November of 1990, Telebit entered into negotiations with ParaData for the purchase of the Communications Products Division ("CPD") of ParaData and exclusive rights to ACS computer software then owned by ParaData. On January 9, 1991, Telebit made a written offer to ParaData for the purchase of the CPD and the rights to the ACS products. ParaData informed Telebit that it had already received a higher offer from another, unnamed company. Eight days later, Telebit resubmitted a higher bid which ParaData accepted. The parties entered into a formal agreement on February 10, 1991. Telebit paid ParaData $1 million as a technology licensing fee and $1 million in prepaid royalties on Telebit's future sales of ACS products. Telebit also agreed to pay royalties to ParaData on ACS sales over the next four years according to an agreed formula.

Dissatisfied with the efforts made by Telebit to sell ACS products, ParaData brought suit against Telebit in May of 1992. The essence of ParaData's claim is that Telebit misrepresented its commitment to maximize sales, and instead, purchased the product to keep it from falling into the hands of a competitor. Telebit is asking this court to grant its motion for summary judgment on all four counts.

## II. STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "A fact is 'material' and precludes grant of summary judgment if proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect [the] application of appropriate principle[s] of law to the rights and obligations of the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir.1984) (citation omitted) (quoting Black's Law Dictionary 881 (6th ed. 1979)). The

court must view the evidence in a light most favorable to the nonmovant as well as draw all reasonable inferences in the nonmovant's favor. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 993, 8 L.Ed.2d 176 (1962); *Bender v. Southland Corp.*, 749 F.2d 1205, 1210–11 (6th Cir.1984).

The movant bears the burden of demonstrating the absence of all genuine issues of material fact. *See Gregg v. Allen–Bradley Co.*, 801 F.2d 859, 861 (6th Cir.1986). The initial burden on the movant is not as formidable as some decisions have indicated. The moving party need not produce evidence showing the absence of a genuine issue of material fact. Rather, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Once the moving party discharges that burden, the burden shifts to the nonmoving party to set forth specific facts showing a genuine triable issue. Fed.R.Civ.P. 56(e); *Gregg*, 801 F.2d at 861.

■ To create a genuine issue of material fact, however, the nonmovant must do more than present some evidence on a disputed issue. As the United States Supreme Court stated in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986),

> There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

(Citations omitted). *See Catrett*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). The standard for summary judgment mirrors the standard for a directed verdict under Fed.R.Civ.P. 50(a). *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511. Consequently, a nonmovant must do more than raise some doubt as to the existence of a fact; the nonmovant must produce evidence

that would be sufficient to require submission to the jury of the dispute over the fact. *Lucas v. Leaseway Multi Transp. Serv., Inc.*, 738 F.Supp. 214, 217 (E.D.Mich.1990), *aff'd*, 929 F.2d 701 (6th Cir.1991). The evidence itself need not be the sort admissible at trial. *Ashbrook v. Block*, 917 F.2d 918, 921 (6th Cir.1990). However, the evidence must be more than the nonmovant's own pleadings and affidavits. *Id.*

## III. FRAUD AND MISREPRESENTATION

■ In order to show fraud in Michigan, a plaintiff must prove with clear and convincing evidence that the defendant (1) made a material representation; (2) that was false; (3) that when the defendant made the misrepresentation it knew it was false; (4) that the defendant made the misrepresentation with the intention that it should be acted upon by the plaintiff; (5) that the plaintiff acted in reliance upon it; and (6) that the plaintiff suffered injury. *Gorman v. Soble*, 120 Mich.App. 831, 840, 328 N.W.2d 119 (1982).

ParaData claims that Telebit made various fraudulent promises and representations during the negotiations with no intention to perform them. ParaData says it relied on these representations when it entered into the contract and rejected the offer by U.S. Robotics, the other company competing with Telebit.

ParaData asserts the following promises and representations amount to a claim of fraud:

1. Telebit represented itself to have an existing distribution channel of the necessary resellers who could deal in "high-end" products like the ACS software. ParaData allegedly relied on this representation because it wanted to be assured that Telebit was capable of selling ACS products. ParaData contends that at the time Telebit made this representation, it knew that its representations about the capabilities of its distribution network were false.

2. Telebit represented that all of its sales and marketing resources, including a sixty person sales staff, would be involved in maximizing the sales of ACS products. ParaDa-

ta claims that this representation was false at the time it was made because the sales resources of Telebit were completely consumed to full capacity on other Telebit products and would remain so after consummation of the agreement. If ParaData had known that these representations were false, then it asserts that it would not have entered into agreement with Telebit.

3. Telebit represented that it had the ability to have its national distributors, Ingram–Micro and Merisel, carry ACS products in their inventories. ParaData contends that Telebit never intended to do this, but that ParaData relied on this representation in making its decision to contract with Telebit.

4. Telebit represented that it would use $25 million in cash reserves towards marketing ACS products. ParaData contends that Telebit did not have these resources when it made these representations and did not intend to use any that it did have towards the marketing of ACS.

5. Telebit represented that it had a new product, "PocketBlazer," that would be on the market in sixty days that would greatly add to the marketability of ACS products. ParaData contends that this product was no where near completion at the time of negotiations and that Telebit knew this when it made this representation.

6. Telebit agreed with ParaData that $60 million in sales were forecast over the next four years, and it represented that it would devote the necessary resources towards achieving that goal. ParaData contends that Telebit never believed this forecast, that its actual internal forecast was $37 million, that immediately after the deal was signed the internal forecast became $16 million, and that only $3.4 million in sales have actually been made since February of 1991.

7. Telebit represented and promised that it would use its best efforts to sell and market ACS products over the four years following the contract. ParaData claims that Telebit did not use its best efforts and that Telebit never intended to use its best efforts.

8. Telebit represented and promised that the CPD Division would be maintained as a separate business unit that would remain in

Michigan for at least a year. ParaData contends that it relied on this promise in making its decision between U.S. Robotics and Telebit. Furthermore, ParaData asserts that the CPD Division was not maintained as a separate unit and that Telebit never intended to do so.

It is the claim of ParaData that Telebit never intended to follow through on its promises and representations about the sale of ACS products. Allegedly, Telebit was merely interested in getting hold of ACS technology and in removing ACS products as a competitor with other Telebit products.

Defendant Telebit claims that it intended to fulfill the promises that it made during the negotiations, and that as such, it did not commit fraud. This court finds that there is a genuine issue of material fact over whether or not Telebit intended to follow through on its promises and representations to ParaData. ParaData has set forth specific facts to support each of the above allegations showing a genuine triable issue that is sufficient to require submission of the dispute to a jury. There is enough evidence favoring ParaData for a jury to return a verdict in its favor. As a result, summary judgment is inappropriate on the count of fraud and misrepresentation.

## IV. BREACH OF CONTRACT

ParaData claims that Telebit breached their contract by failing to aggressively market and sell ACS products. ParaData argues that Telebit violated an express provision of the contract between them that allegedly required Telebit to use its best efforts. It is further argued that this court should imply a duty of best efforts on Telebit, a duty that Telebit violated during the term of the contract. Finally, ParaData asserts that Telebit's actions violated an implied covenant of good faith and fair dealing.

### A. Breach of Express Provisions

Telebit argues that there was no provision in its contract with ParaData that imposed a duty on it to generate any sales or to expend any resources in marketing ACS products. Telebit further argues that the contract contains no "best efforts" provision,

and that this type of provision was specifically left out of the agreement as is evidenced by the fact that such a clause was included elsewhere in the contract. That particular clause requires ParaData to use its best efforts to preserve the business of the CPD Division before closing. Thus, Telebit concludes that the express provisions of the contract do not impose any duty on it to market and sell the ACS products.

ParaData disagrees however, pointing to section 7 of the Technology Transfer Agreement, which states in full:

## FURTHER ASSURANCES

At any time or from time to time on and after the date of this Agreement, either party shall at the request of the other (i) deliver to the other party such records, data or other documents consistent with the provisions of this Agreement; (ii) execute, and deliver or cause to be delivered all such assignments, consents, documents or further instruments or transfer or license; and (iii) take or cause to be taken all such other actions, as such other party may reasonably deem necessary or desirable in order for such party to obtain the full benefits of this Agreement and the transactions contemplated therein.

ParaData contends that this clause in the contract required Telebit to make efforts to market and sell ACS products. Such efforts were necessary for ParaData to obtain the full benefits of the agreement.

The court finds, however, that it is clear that this section of the contract does not impose a duty of best efforts upon Telebit. It is merely an assurances clause that requires the parties to follow through with the other provisions of the contract and to carry out necessary administrative tasks related to the closing and execution of the contract. If ParaData wanted to impose a duty of best efforts on Telebit it should have done so explicitly. Instead, it chose to rely upon the representations of Telebit concerning the marketing of ACS. Whether or not those representations were improper is the subject of Count I of the complaint.

Even if this section could be construed as imposing a duty on Telebit to do what was reasonably necessary to market and sell ACS products, ParaData has made no showing that it made any request of Telebit to so perform. According to the contract, such a request is required before any alleged duty from section 7 is imposed. As a result, under either interpretation of this clause of the contract, Telebit was not under any duty to market and sell ACS products.

## B. Implied Covenant of Good Faith and Fair Dealing

ParaData also argues that this court should imply a covenant of good faith and fair dealing upon Telebit, and that Telebit violated this covenant when it failed to adequately support the sales and marketing of ACS products. Telebit moves for summary judgment, arguing that the covenant does not apply in this case.

■ Michigan courts will recognize an action for breach of an implied covenant of good faith and fair dealing where "a party to a contract makes the manner of its performance a matter of its own discretion." *Burkhardt v. City National Bank of Detroit*, 57 Mich.App. 649, 652, 226 N.W.2d 678, 680 (1975). Thus, if Telebit's performance was a matter of its own discretion, then this court will imply the covenant.

Whether a performance is a matter of a party's discretion depends on the nature of the agreement between them. In *Burkhardt*, a defendant bank had the discretion to estimate the amount of taxes and insurance that had to be paid on a mortgage. The plaintiff mortgagors claimed that the bank used accounting methods that withheld more money than was needed to meet the costs. The Michigan court implied a covenant of good faith on the bank because of the considerable discretion it had to estimate the costs.

In *Hubbard Chevrolet Co. v. General Motors Corp.*, 873 F.2d 873 (5th Cir.1989), the Fifth Circuit applied Michigan law to a dispute over the application of a relocation clause of a franchise agreement. The clause gave General Motors the right to refuse permission to a request to move a dealership. The court found that because the contract

did not use discretionary language and because the duties and rights involved were "unmistakably expressed," the covenant could not be implied. *Id.* at 878. The court stated that the implied covenant "serves to supply limits on the parties' conduct when their contract defers decision on a particular term, omits terms or provides ambiguous terms." *Id.* at 876–77.

In the case at hand, Telebit argues that it had no discretion in the performance of its duties to the contract. Since Telebit claims that it had no express duties to market or sell ACS products, it claims that discretion in making sales should not even be an issue. ParaData again relies on section 7 of the Technology Transfer Agreement.

As previously explained, however, this court does not construe section 7 as imposing a discretionary duty upon Telebit, such as a duty of best efforts. Thus, Telebit had no discretion in the performance of its duties under the contract. As discretion is the hallmark of the covenant, this court will not imply a covenant of good faith and fair dealing on the enforcement of the contract.

### C. Implied Duty of Best Efforts

ParaData argues that this court should imply a duty on Telebit, as an exclusive licensee, to use best efforts to market and sell ACS products. ParaData relies on the leading case of *Wood v. Lucy, Lady Duff–Gordon*, 222 N.Y. 88, 118 N.E. 214 (1917), where the court implied such a duty. In *Wood*, plaintiff gave defendant the exclusive right to market her clothing designs. The contract expressed no duty on the part of the defendant to take any action to market the designs. The court, however, implied a duty of best efforts on the defendant to market the designs in order for the plaintiff to get the benefit of the bargain as was implied from the nature of the transaction. Similarly, ParaData claims that the same duty should be implied on Telebit.

Telebit argues that *Wood* does not apply to this case because of the particular nature of this agreement. Instead, Telebit relies on

*Permanence Corp. v. Kennametal, Inc.*, 908 F.2d 98 (6th Cir.1990),[1] where the court refused to imply the duty of best efforts to a situation involving a contract similar to the case at hand. In *Permanence*, plaintiff licensed its patent to the defendant in exchange for an upfront payment of $150,000 and an advance payment of royalties of $100,000. The court granted summary judgment to defendant, holding that no implied duty existed. Of particular importance to the court was the upfront payment to secure the license. The court explained:

Courts have held that by imposing a substantial minimum or advance royalty payment, the licensor, in lieu of obtaining an express agreement to use best efforts, has protected himself against the possibility that the licensee will do nothing. Rather than leaving the licensor at the mercy of the licensee, the demand for a substantial upfront or advance royalty payment creates an incentive for the licensee to exploit the invention of patent.

*Id.* at 102. Thus, the payment of royalties in advance relieved the court of the necessity of implying a duty of best efforts. The upfront payment substituted for the implied duty.

In this case, ParaData received $1 million in upfront royalty payments in exchange for the exclusive rights to ACS products that it granted to Telebit. These prepaid royalty payments assured ParaData that it would receive something for its sale of the ACS products. It also gave Telebit an incentive to effectively market ACS in order to make up for the cost of acquiring the system that it paid to ParaData in the first place. There is no reason to imply a duty of best efforts in this case as there was in *Wood*, where there was no consideration given in advance for the exclusive license. The court in *Wood* had to imply best efforts in order to effectuate the intent of the parties. Here, Telebit made a substantial upfront payment of royalties that makes it unnecessary to imply such a duty.

### V. TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS

■ ParaData claims that Telebit intentionally used its fraudulent representations

---

1. The Sixth Circuit was applying Pennsylvania law in *Permanence,* but the general principles of contract law are the same in Michigan.

and promises to induce ParaData to enter into a contract with Telebit, rather than U.S. Robotics, the company that was also offering to purchase the CPD Division and the rights to ACS products. ParaData asserts that this amounts to tortious interference with business relations. In order to make out such a claim, ParaData must show:

(1) the existence of a valid business relation (not necessarily evidenced by an enforceable contract) or expectancy; (2) knowledge of the relationship or expectancy on the part of the defendant interferer; (3) an intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted.

*Michigan Podiatric Medical Ass'n v. National Foot Care Program, Inc.,* 175 Mich. App. 723, 735, 438 N.W.2d 349, 354 (1989). The interference must also be shown to have been improper, which means "the intentional doing of a per se wrongful act or the doing of a lawful act with malice and unjustified in law for the purposes of invading the ... business relationship of another." *Feldman v. Green,* 138 Mich.App. 360, 378, 360 N.W.2d 881, 888 (1984). Thus, if Telebit made fraudulent misrepresentations to ParaData during the negotiations that ParaData relied on in making its decision to reject the offer made by U.S. Robotics, then Telebit would be liable for this interference. The second element is present because after January 9, 1991, Telebit was aware that it was competing with another company for the contract with ParaData. ParaData has sufficiently alleged that the representations and promises were renewed after Telebit's initial offer was rejected.

Since this court has already found that a genuine issue of material fact exists as to whether Telebit made fraudulent misrepresentations and promises that ParaData relied on in taking Telebit's offer instead of the offer made by U.S. Robotics, summary judgment would be inappropriate on this count as well.

## VI. PROMISSORY ESTOPPEL

■ ParaData claims that it reasonably relied on Telebit's promises to aggressively market ACS products, and that as a result, it passed up a better deal with U.S. Robotics. Applying Michigan law, the Sixth Circuit has held that " 'where ... the performance which is said to satisfy the detrimental reliance requirement of the promissory estoppel theory is the same performance which represents consideration for the written contract, the doctrine of promissory estoppel is not applicable.' " *General Aviation, Inc. v. Cessna Aircraft Co.,* 915 F.2d 1038, 1042 (6th Cir. 1990) (quoting the district court's decision, 703 F.Supp. 637, 647 n. 10 (W.D.Mich.1988)). In *General Aviation,* the plaintiff claimed estoppel where defendant promised to treat it equally with other dealers. According to the court, plaintiff's reliance on the promises ended when it entered into the contract and received the consideration bargained for under the agreement. The Sixth Circuit also relied on *Walker v. KFC Corp.,* 728 F.2d 1215 (9th Cir.1984), where the court stated that "[p]romissory estoppel is not a doctrine designed to give a party to a negotiated commercial bargain a second bite at the apple in the event it fails to prove a breach of contract." *Id.* at 1220.

The performance of the contract by ParaData was also the detrimental reliance it claims under this theory of liability. In exchange for the agreement with Telebit, ParaData gave up its opportunity with U.S. Robotics. ParaData cannot rely on promissory estoppel when it has a fully integrated contract for which it can seek redress. Any promises made by Telebit should have been made a part of the contract if ParaData hoped to rely on them. Thus, promissory estoppel is inapplicable to this case and summary judgment should be granted to Telebit on this count.

## ORDER

Therefore, it is hereby **ORDERED** that defendant's motion for summary judgment is **GRANTED** on plaintiff's counts of promissory estoppel and breach of contract. Defendant's motion for summary judgment is **DE-NIED** on plaintiff's counts of fraud and mis-

representation and tortious interference with business relations.

**SO ORDERED.**