788 N.W.2d 842 (2010)
287 Mich. App. 326
MICHIGAN DEFERRED PRESENTMENT SERVICES ASSOCIATION, INC.
v.
COMMISSIONER OF the OFFICE OF FINANCIAL AND INSURANCE REGULATION.
Docket No. 292685.
Court of Appeals of Michigan.
Submitted January 6, 2010, at Detroit.
Decided February 18, 2010, at 9:00 a.m.
*843 Fried Porter, PLLC (by Louis J. Porter), for plaintiff.
Michael A. Cox, Attorney General, B. Eric Restuccia, Solicitor General, and David W. Silver, Assistant Attorney General, for defendant.
Before: WILDER, P.J., and O'CONNELL and TALBOT, JJ.
PER CURIAM.
This civil rights dispute brought under 42 U.S.C.A. § 1983 concerns an administrative order issued by defendant, Commissioner of the Office of Financial and Insurance Regulation (OFIR), that allegedly prohibited plaintiff's members from seeking, in this state's courts, treble damages for nonsufficient funds (NSF) checks given by their customers. In its January 14, 2009, opinion and order, the lower court struck down defendant's administrative order as an unconstitutional infringement of the right of access to the courts. We reverse in part, vacate in part, and remand for proceedings consistent with this opinion.
Plaintiff is an association of companies licensed under the Deferred Presentment Service Transactions Act (DPSTA), MCL 487.2121 et seq., which is a statute that regulates the business of payday lending and of other businesses that provide short-term advancements of money to consumers up to the statutory limit of $600. The OFIR, formerly known as the Office of Financial and Insurance Services, is part of the Michigan Department of Energy, Labor, and Economic Growth.
Before passage of the DPSTA, payday lenders who received checks that were returned to them for nonsufficient funds obtained judgments under MCL 600.2952(4), a provision of the Revised Judicature Act (RJA) that allows for treble damages for a dishonored check under some circumstances.[1] The RJA also authorizes recovery *844 of a small processing fee and court costs of $250. MCL 600.2952(4).
In 2005, the Legislature passed the DPSTA to regulate payday lenders and to curb abuses within the industry. The DPSTA became effective on November 28, 2005. 2005 PA 244; MCL 487.2121. Under the DPSTA, a payday loan is called a deferred presentment service transaction. MCL 487.2122(1)(g). Under such a transaction, for a fee, the payday lender gives the customer a certain amount of money in exchange for a check in repayment of the loan; the lender then holds the customer's check for a period before presentment to the drawee bank. See MCL 487.2122(1)(g), (h). The DPSTA requires that entities engaged in such lending receive a license. MCL 487.2131. According to defendant, 788 licenses had been issued under this act. The DPSTA also limits the amount that a licensee could collect for a returned check to the face amount of the check amount plus $25. MCL 487.2158.
It is undisputed that, after passage of the DPSTA, payday lenders continued to seek and obtain damages under MCL 600.2952.[2] On April 3, 2008, defendant issued the administrative order at issue in this case. The administrative order explained, "To stop current practices by some licensees and to prevent the spread of these unlawful actions, it is necessary and appropriate to issue an order directing licensees to conform to the limitations in MCL 487.2158 regarding checks returned due to insufficient funds." The administrative order also noted:
MCL 487.2167 gives the Commissioner the power to revoke licenses for violations of the [DPSTA] and his orders, such as this Order, if he finds that a licensee has done so "knowingly or through lack of due care."
MCL 487.2168 authorizes the Commissioner to impose civil fines for violation of the [DPSTA]. If the Commissioner finds that a licensee "knew or reasonably should have known" that he or she was in violation of the Act, the Commissioner may order the licensee to pay a civil fine of not less than $5,000 or more than $50,000 for each violation.
* * *
When the staff of this agency examines the books and records of a licensee, the staff will evaluate compliance with this Order as part of its examination.
The administrative order concluded, "Therefore, it is ORDERED that licensees shall not, with respect to a check returned due to insufficient funds, recover anything other than the face amount of the check, a returned check charge of $25.00, and, in the event of a lawsuit, court costs. In particular, a licensee shall not seek any remedy under MCL 600.2952 with respect to any check returned due to insufficient funds." The administrative order was sent to licensees and posted on the agency's website.
On May 22, 2008, plaintiff filed its cause of action asserting claims for (1) denial of the federal constitutional right of access to the courts under 42 U.S.C.A. § 1983; (2) denial of various state constitutional rights, including the right of access to the courts, *845 the right to petition the government, freedom of speech, due process, and rights under the fair and just treatment clause; and (3) violation of the Michigan Constitution's separation of powers provision. Plaintiff sought declaratory and injunctive relief, but not damages.
Both sides moved for summary disposition. Plaintiff's motion, brought under MCR 2.116(C)(10), also sought a permanent injunction, and plaintiff requested attorney fees under 42 U.S.C.A. § 1988. Defendant's motion was brought under MCR 2.116(C)(8) and (10). In its motion, plaintiff asserted three arguments: (1) that defendant, through his administrative order, denied plaintiff's members their rights of access to the courts, freedom of speech, and due process of law; (2) that defendant usurped powers belonging to the judicial branch; and (3) that defendant has no authority over collection practices and no standing to assert the rights of borrowers or customers.
In his motion, defendant explained that before the DPSTA took effect, the payday lending service sector was known for its exorbitant fees and hardnosed collection practices, but the DPSTA changed the landscape dramatically, requiring licensure of payday lenders after July 1, 2006, and making the OFIR the state regulator with enforcement powers. Defendant argued that the DPSTA's provision authorizing the commissioner to "issue orders and rules that he or she considers necessary to enforce and implement this act," MCL 487.2140(1), constitutes sufficient authority for defendant to issue his April 3, 2008, administrative order. Defendant argued that the DPSTA's provision in MCL 487.2158 listing the remedies available to a licensee for a returned check precluded a licensee from recovering the more ample remedies available under the RJA.
In an opinion and order dated January 14, 2009, the lower court granted plaintiff's motion for summary disposition and denied defendant's motion for summary disposition. The lower court concluded that the administrative order barred licensees from asserting a legally tenable position in court where no binding appellate decision supported the agency's interpretation of the statutory provisions in conflict, and that "such action unconstitutionally usurps the judicial function, denigrates the rule of law, and infringes upon the constitutional right of access to the courts. . . ."
The opinion concluded that defendant's administrative order sought to overturn orders or judgments entered by courts, and that defendant lacked authority to do so. The lower court noted that it is the province of the judicial department to say what the law is, and that defendant threatened to sanction a licensee for pursuing certain legal remedies in court. The lower court stated that an administrative agency may only sanction a licensee for advocating a legal position in court when the position is legally baseless, i.e., when no reasonable litigant could realistically expect success on the merits, and that the licensees were not advocating legally baseless claims in seeking treble damages in district court proceedings. The lower court therefore concluded that defendant had infringed the licensees' First Amendment right of access to the courts. The lower court granted plaintiff's request for an injunction, stating that defendant was enjoined from enforcing or threatening to enforce the administrative order. Notably, the lower court never addressed whether the DPSTA actually precluded licensed payday lenders from seeking recovery under the RJA.[3]
*846 In so doing, the lower court failed to address the central issue in this case, namely, whether defendant's administrative order correctly interpreted the DPSTA to limit a payday lender's remedies when a borrower's check is returned for nonsufficient funds to the face amount of the check plus a $25 returned check charge, instead of the treble damages permitted by MCL 600.2952. However, this issue must be addressed because plaintiff's constitutional claims hinge on the proposition that defendant's analysis of the relationship between the DPSTA and the RJA is incorrect and, therefore, defendant is somehow precluding plaintiff's members from seeking the recovery to which they are legally entitled.[4] See Prudential Ins. Co. of America v. Cusick, 369 Mich. 269, 290, 120 N.W.2d 1 (1963).
We conclude that the administrative order is a correct interpretation of the applicable law. Statutory construction is a question of law that we review de novo. McManamon v. Redford Charter Twp., 273 Mich.App. 131, 134, 730 N.W.2d 757 (2006). The applicable principles of statutory construction are well established, and we begin our analysis by consulting the specific statutory language at issue. Provider Creditors Comm. v. United American Health Care Corp., 275 Mich.App. 90, 95, 738 N.W.2d 770 (2007). We give effect to the Legislature's intent, as expressed in the terms of the statute, by giving the words of the statute their plain and ordinary meaning. In re Kostin Estate, 278 Mich.App. 47, 57, 748 N.W.2d 583 (2008). "`When the language poses no ambiguity, this Court need not look beyond the statute or construe the statute, but need only enforce the statute as written.'" Id., quoting McManamon, supra at 136, 730 N.W.2d 757. We will not interpret a statute in a way that renders any statutory language surplusage or nugatory. Pohutski v. City of Allen Park, 465 Mich. 675, 684, 641 N.W.2d 219 (2002).
"Statutes that relate to the same subject or that share a common purpose are in pari materia and must be read together as one law, even if they contain no reference to one another and were enacted on different dates." Walters v. Leech, 279 Mich.App. 707, 709-710, 761 N.W.2d 143 (2008). "The object of the in pari materia rule is to give effect to the legislative intent expressed in harmonious statutes." Id. at 710, 761 N.W.2d 143. To the extent that statutes that are in pari materia are unavoidably in conflict and cannot be reconciled, the more specific statute controls. In re Kostin Estate, supra at 57, 748 N.W.2d 583.
The section of the RJA at issue, MCL 600.2952, and the section of the DPSTA at issue, MCL 487.2158, relate to the same subject matter. Both statutes specify remedies available to entities that have been given a check that is later returned by the drawee because insufficient funds are available in the account to honor the draft. Therefore, these two statutes are in pari materia.
The two statutory sections irreconcilably conflict. Although the RJA section would grant treble damages plus costs to the entity given an NSF check, MCL 600.2952(4), the DPSTA limits the recovery to the face amount on the check plus a returned check charge of $25. MCL 487.2158(2), (3). Therefore, the more specific *847 statute must control. In re Kostin Estate, supra at 57, 748 N.W.2d 583. The DPSTA is clearly the more specific statute. It relates only to payday lenders, while the RJA section relates to any person or entity given a check that is dishonored by the drawee (i.e., the bank). MCL 600.2952(4). Accordingly, the DPSTA controls the remedies available to a payday lender who is given a check by a customer when the check, upon deferred presentment, is dishonored by the drawee because of insufficient funds.
Defendant also provides an additional valid reason why the DPSTA should control. MCL 487.2158(2) states in pertinent part: "In addition to the charge authorized by this section, a licensee may exercise any other remedy available under any law applicable to the return of a check because of a closed account or a stop payment order." Thus, the Legislature preserved other preexisting legal remedies available to a person given a check that is dishonored because of a closed account or a stop payment order. Under the principle of expressio unius est exclusio alterius ("the express mention of one thing implies the exclusion of another"), Wayne Co. v. Wayne Co. Retirement Comm., 267 Mich.App. 230, 248, 704 N.W.2d 117 (2005), we interpret the DPSTA to have preserved legal remedies existing before its enactment for checks dishonored for the aforementioned reasons, but not to have preserved preexisting legal remedies against a person who gives a check that is later returned because of nonsufficient funds. Thus, the reason why the check is dishonored also determines the remedy available.
Defendant's interpretation of the applicable provisions of the DPSTA and the RJA was correct. Accordingly, the only thing that defendant is "ordering" the payday lenders to do is abide by the provisions of the statute. It is the DPSTA, not defendant or the OFIR, that ultimately prohibits payday lenders from recovering treble damages under the RJA. The administrative order simply "prohibits" payday lenders from violating a statute that they are required to follow anyway. We know of no caselaw holding that an administrative agency violates an entity's constitutional rights by advising it to follow the law. We also see no error in an administrative agency correctly explaining the law that it is charged with enforcing. See Clonlara, Inc. v. State Bd. of Ed., 442 Mich. 230, 240, 501 N.W.2d 88 (1993) ("Agencies have the authority to interpret the statutes they are bound to administer and enforce.").
Further, there is no violation of 42 U.S.C.A. § 1983 because payday lenders are not being denied access to the courts. Payday lenders are not prohibited from filing claims with district courts to institute causes of action to recover for NSF checks. MCL 487.2158 expressly provides for a means of recovery for NSF and other returned checks, and for the reasons stated earlier, enactment of the DPSTA statutorily precludes recovery in the manner provided in the RJA. Plaintiff cannot claim that a violation of 42 U.S.C.A. § 1983 occurred simply because a newly enacted statute precluded recovery of certain damages that plaintiff's members had become accustomed to receiving in NSF cases.[5]
*848 Further, the administrative order simply informs payday lenders of the authority that, by statute, the Legislature granted to the OFIR to enforce the DPSTA and to respond to violations. If it so chooses, a licensed payday lender may still file a cause of action with the district court seeking recovery in excess of what the DPSTA statutorily permits. The statute, however, permits the OFIR to revoke licenses and impose civil fines for violations of the DPSTA. The administrative order notifies payday lenders of the consequences of choosing to violate the DPSTA, all of which are authorized by statute. Defendant does not violate 42 U.S.C.A. § 1983 by issuing an administrative order informing payday lenders of the statutorily mandated penalties that they face if they violate the provisions of the DPSTA.[6]
Accordingly, the January 14, 2009, opinion and order in this case is reversed, and the February 25, 2009, judgment in this case is vacated. By extension, the subsequent determination in this case, including the circuit court's award of $121,794.65 in attorney fees and costs and its opinion and order denying plaintiff's motion to enforce the earlier order and judgment are also vacated. Consequently, plaintiff's claims on appeal that the trial court erred by entering a judgment not in conformity with the requirements of MCR 3.310(C) and by failing to grant plaintiff a declaratory ruling are moot.
Reversed in part, vacated in part, and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.
NOTES
[1] MCL 600.2952(4) states:

Except as otherwise provided in subsection (5), a maker who fails to make payment pursuant to subsection (3) and who is found responsible for payment in a civil action is liable to the payee for payment of all of the following:
(a) The full amount of the check, draft, or order.
(b) Civil damages of 2 times the amount of the dishonored check, draft, or order or $100.00, whichever is greater.
(c) Costs of $250.00.
[2] For example, one payday lender, Cash Now XV, LLC (Cash Now), filed a claim in the small claims division of the 36th District Court against a customer for damages resulting from a check returned NSF. The claim was filed on May 7, 2007, and Cash Now requested damages under MCL 600.2952 of the RJA.
[3] Ironically, although the lower court based its decision on the notion that the judiciary, not the executive branch, "says what the law is," the lower court never actually made a determination regarding the proper relationship between the underlying statutes in this case.
[4] In the lower court proceedings, defendant asserted that his interpretations of the DPSTA and the RJA were correct, preserving this issue for our review.
[5] We find it particularly troubling that payday lenders continue to seek damages under the RJA, in contravention of the DPSTA, against individuals who do not have the resources or legal acumen to address the payday lenders' repeated application of the incorrect statute. Many customers of payday lenders are individuals who live from paycheck to paycheck; the point of the payday lending business is to provide short-term salary advances to individuals who otherwise would not have enough money to make it to their next payday. Therefore, many of these default judgments would be against individuals who probably cannot afford legal representation and who likely are not even aware that the payday lender sought recovery under the wrong statute. Why would a down-on-his-luck working person, who needed a payday advance to pay his bills, whose check to the payday lender subsequently bounced, and who knew that he still owed money to the payday lender, question the legality of a judgment requiring him to pay treble damages and costs to the payday lender? Realistically, how would such an individual even know that the DPSTA, not the RJA, governed the amount that a payday lender could recover for his bounced check, and how could that individual, lacking legal training or the funds to hire an attorney, hope to make such a technical legal argument?
[6] Plaintiff goes to extreme lengths in crafting its arguments in an attempt to preclude the Court from addressing whether the DPSTA supersedes the RJA with regard to the recovery permitted for a NSF check. Further, although defendant repeatedly maintains that the substance of the administrative order is correct, plaintiff refuses to address whether the DPSTA actually precludes payday lenders from recovering under the RJA for NSF checks in its briefing of this appeal, even as an alternative argument. We conclude that plaintiff's refusal to address the issue whether licensed payday lenders might still seek recovery for NSF checks under the RJA in a post-DPSTA world is a tacit admission that the DPSTA, not the RJA, controls. We can think of no other reason why plaintiff does not address this determinative issue in its brief.