# STATE OF MICHIGAN

# COURT OF APPEALS

PSP STORES, LLC,

        Plaintiff-Appellant,

v

S. NEIL FORD and SERVICE ANYWHERE,
INC.

        Defendants-Appellees.

UNPUBLISHED
August 30, 2018

No. 338241
Wayne Circuit Court
LC No. 16-009068-CB

Before: CAMERON, P.J., and RONAYNE KRAUSE and TUKEL, JJ.

PER CURIAM.

        Plaintiff, PSP Stores, LLC ("PSP"), appeals as of right the trial court's order that granted in part plaintiff's motion for default judgment. For the reasons provided below, we affirm.

## I. BASIC FACTS

        This lawsuit involves the interactions between PSP and two companies (Omni-Care Group, Inc. and defendant Service Anywhere, Inc.), both of which are owned by defendant S. Neil Ford. Prior to this litigation, PSP had a contractual agreement (the "Service Agreement") with Omni-Care and, possibly, Ford,[1] where Omni-Care was to have provided certain services to PSP. Not having received the services it had bargained for, PSP brought suit against Omni-Care and Ford, alleging, among other claims, breach of contract. On March 1, 2016, plaintiff, Omni-Care, and Ford entered into a settlement agreement (the "Settlement Agreement"). The Settlement Agreement provided that Omni-Care was to pay PSP a total of $20,000, with $10,000 due April 15, 2016, followed by monthly payments of $1,666.67 until the total $20,000 amount

---

[1] With no copy of the actual Service Agreement appearing in the lower court record and no copy having been submitted to this Court, we do not know for certain whether Ford was a party to that Service Agreement. But Ford was a listed party to the subsequent Settlement Agreement, which stated that Ford also was a defendant to the lawsuit that arose from the alleged breach of the Service Agreement. Thus, it appears that Ford may have been a party to the initial Service Agreement, although it certainly is not clear what promises, if any, Ford was obligated to perform.

-1-

was paid. The Settlement also provided in the "Default on Payment Obligations" section, in pertinent part, the following:

> Upon any such default that is not cured as expressly provided for above, Omni-Care hereby agrees to entry of a consent judgment against Omni-Care in favor of PSP in the amount of $31,110.24, plus interest, court costs, reasonable attorneys' fees, and other costs incurred or paid by PSP in protecting and/or enforcing its rights under this section, but less any payments previously made by Omni-Care to PSP pursuant to this Agreement.

The Settlement Agreement also contained a "Mutual Release" section, where PSP agreed to

> release and forever discharge Omni-Care and their respective heirs, beneficiaries, officers, directors, shareholders, employees, agents, successors, assigns and affiliated entities from any and all claims, actions, proceedings, debts, liabilities, agreements, controversies, promises, obligations, damages, costs, expenses, attorney fees, and demands in tort, contract or any other cause of action or theory of liability whatsoever, whether known or unknown, arising out of or related to the Service Agreement. Provided, however, PSP's claims against Defendants arising out of breach of this Agreement are excluded from release hereunder.

When it was time for the payment of the initial $10,000 to PSP under the Settlement Agreement, no payment was received. PSP provided written notice of default and five days later, Ford emailed PSP, proposing to amend the Settlement Agreement by modifying the payment schedule. PSP responded that it would agree to the amendment if Ford agreed to guarantee Omni-Care's obligations under the Settlement Agreement. Ford refused, and instead sent two checks, consistent with the modified payment schedule that Ford proposed. Consequently, PSP received two checks: one post-dated April 29, 2016, in the amount of $5,000 and another post-dated May 15, 2016, also in the amount of $5,000. The two checks, however, were drawn on an account of defendant Service Anywhere (and signed by Ford).

Because PSP did not agree to the modification of the payment schedule, it filed a consent judgment against Omni-Care, as outlined in the default section of the Settlement Agreement, which was entered on May 23, 2016, in the amount of $32,760.24.[2]

After the consent judgment was entered, PSP attempted to deposit the two checks it had received from Service Anywhere, but both were returned for insufficient funds. PSP submitted written demands to Ford to pay the amounts that were represented on the two checks. After receiving no payments after 30 days, PSP brought the instant action against Ford and Service

---

[2] Recall that the Settlement Agreement provided that a consent judgment would be entered against Omni-Care in the event of a breach of the Settlement Agreement for an amount equal to "$31,110.24, plus interest, court costs, reasonable attorneys' fees, and other costs . . . ."

Anywhere. In its complaint, PSP brought six counts: I-Violation of MCL 600.2952[3] (for one of the checks); II-Violation of MCL 600.2952 (for the other check); III-Fraud; IV-Alter Ego/Veil Piercing; V-Promissory Estoppel; and VI-Unjust Enrichment. Defendants Ford and Service Anywhere were personally served with the summons and complaint on October 14, 2016.

On November 16, 2016, defaults were entered for both Ford and Service Anywhere. On November 23, 2016, PSP moved for entry of a default judgment against Ford and Service Anywhere. And on December 16, 2016, the trial court held a hearing on PSP's motion for entry of default judgment. At the hearing, the trial court expressed its doubt as to whether PSP could pierce the corporate veil to obtain a judgment against Ford. When asked what facts there were to support this alter ego theory, PSP relied on the fact that Ford signed the checks at issue and owned both Service Anywhere and Omni-Care. The court found these facts to be insufficient to pierce the corporate veil and denied PSP's motion to enter a default against either defendant. However, with respect to Service Anywhere, the trial court asked PSP to brief the issue of jurisdiction, which PSP later did.

On March 8, 2017, PSP filed another motion for entry of default judgment against Ford and Service Anywhere. At the subsequent hearing, the trial court cited the release section from the Settlement Agreement and determined that PSP had released Ford from any liability. The court explained that it had no issue with entering a judgment against Service Anywhere for writing the bad checks, but PSP could not obtain a judgment against Ford because (1) he was released in the Settlement Agreement and (2) there were no facts to support a piercing-the-corporate-veil theory.

On April 17, 2017, the trial court entered an order consistent with its pronouncements from the March hearing. Specifically, the trial court granted a default judgment against Service Anywhere in the amount of $30,500 for violating MCL 600.2952,[4] but denied PSP's motion in all other respects.

## II. ANALYSIS

The only issue before us is whether the trial court erred when it denied PSP's motion for entry of default judgment against Ford. We conclude that the court did not err.

This Court reviews a trial court's decision to grant or deny a default judgment for an abuse of discretion. *ISB Sales Co v Dave's Cakes*, 258 Mich App 520, 526; 672 NW2d 181

---

[3] MCL 600.2952 "allows for treble damages for a dishonored check under some circumstances." *Mich Deferred Presentment Servs Ass'n v Comm'r of Office of Fin & Ins Regulation*, 287 Mich App 326, 328; 788 NW2d 842 (2010).

[4] MCL 600.2952(4) provides that the damages for writing a bad check includes, the full amount of the check, civil damages of two times the amount of the dishonored check, and costs of $250. Thus, with two dishonored checks, and each written for $5,000, the court calculated damages of $15,250 per check ($5,000 + $5,000 x 2 + $250) for a total of $30,500 for the two checks.

(2003); *Barclay v Crown Bldg & Development, Inc*, 241 Mich App 639, 642; 617 NW2d 373 (2000). A trial court abuses its discretion when it selects an outcome that does not fall within the range of reasonable and principled outcomes. *Pontiac Fire Fighters Union v City of Pontiac*, 482 Mich 1, 8; 753 NW2d 595 (2008). But a trial court's decision whether to pierce the corporate veil is reviewed de novo. *Foodland Distrib v Al-Naimi*, 220 Mich App 453, 456; 559 NW2d 379 (1996). And whether a claim properly states a cause of action is a question of law that we also review de novo. See *Eason v Coggins Mem Christian Methodist Episcopal Church*, 210 Mich App 261, 263; 532 NW2d 882 (1995).

PSP contends that because it properly pleaded causes of action, including piercing the corporate veil, against Ford, the trial court should have entered a default judgment against Ford.

While entry of a default is the equivalent of an admission by the defaulting party, such admission only extends to all well-pleaded allegations. *American Cent Corp v Steven Van Lines*, 103 Mich App 507, 512; 303 NW2d 234 (1981); see also *Kalamazoo Oil Co v Boerman*, 242 Mich App 75, 79; 618 NW2d 66 (2000). Thus, where a default has been entered, the defendant's liability is admitted. *Kalamazoo Oil*, 242 Mich App at 79. However, "a default does not operate as an admission that the complaint states a cause of action. If the complaint fails to state a cause of action, it will not support a judgment." *State ex rel Saginaw Prosecuting Attorney v Bobenal Investments, Inc*, 111 Mich App 16, 22; 314 NW2d 512 (1981); see also *Lindsley v Burke*, 189 Mich App 700, 702; 474 NW2d 158 (1991) ("[A] complaint that fails to state a cause of action cannot support a judgment.").

In its complaint for claims against Ford, PSP purported to plead causes of action for fraud, veil piercing, promissory estoppel, and unjust enrichment. At the outset, we note that piercing the corporate veil is not a separate cause of action. *Gallagher v Persha*, 315 Mich App 647, 655; 891 NW2d 505 (2016). Instead, it simply is a remedy to allow a plaintiff to recover "from a responsible corporate shareholder." *Id.* at 654. As a result, in order to recover under a piercing-the-corporate-veil theory, PSP had to have established a separate, viable cause of action *and* the elements necessary to pierce the corporate veil against Ford.

We first address whether PSP can pierce the corporate veil.

> A corporation—or other artificial entity—is a legal fiction. It is an artificial being, invisible, intangible, and existing only in contemplation of law. Absent some abuse of corporate form, courts honor this fiction by indulging a presumption—often referred to as the corporate veil—that the entity is separate and distinct from its owner or owners. Courts will honor this presumption even when a single individual owns and operates the entity. [*Green v Ziegelman*, 310 Mich App 436, 450-451; 873 NW2d 794 (2015) (quotation marks, citations, and brackets omitted).]

However, "[w]hen this fiction is invoked to subvert justice, it is ignored by the courts." *Wells v Firestone Tire & Rubber Co*, 421 Mich 641, 650; 364 NW2d 670 (1984). In order to pierce the corporate veil, the following elements must be satisfied: "(1) the corporate entity is a mere instrumentality of another individual or entity, (2) the corporate entity was used to commit a wrong or fraud, and (3) there was an unjust injury or loss to the plaintiff." *Lakeview Commons v*

-4-

*Empower Yourself*, 290 Mich App 503, 510; 802 NW2d 712 (2010). Here, PSP failed to plead sufficient facts to show that Service Anywhere (or Omni-Care) was a mere instrumentality of Ford. Instead, PSP's complaint is filled with generalities and conclusory statements. See *Eason*, 210 Mich App at 263 ("[M]ere conclusions, unsupported by allegations of fact, will not suffice to state a cause of action."). When PSP's counsel was asked point blank at the motion hearing at the trial court what facts there were to support this theory of recovery, counsel responded that Ford was the sole owner of both Omni-Care and Service Anywhere and that Ford was the one who signed and sent the two $5,000 checks that bounced. We agree with the trial court that these facts are insufficient to show that either company was a mere instrumentality of Ford. The fact Ford signed the two checks drawn on Service Anywhere's account is of little significance because, as plaintiff has already alleged, Ford was the sole owner of Service Anywhere. Thus, Ford simply signing checks on behalf of Service Anywhere does not demonstrate that he was using Service Anywhere as a mere instrumentality *for himself*. Indeed, because Service Anywhere apparently was attempting to pay the debts of Omni-Care, at best one could possibly opine that Service Anywhere was a mere instrumentality *of Omni-Care*. But PSP was seeking to obtain a judgment against Ford—not Service Anywhere—under a veil-piercing theory.[5] Accordingly, with PSP failing to allege facts sufficient to show that Service Anywhere or Omni-Care was a mere instrumentality of Ford, the trial court properly declined to enter a judgment against Ford.

Moreover, assuming PSP had pled sufficient facts to pierce the corporate veil to recover from Ford individually, PSP failed to allege a viable underlying claim that would support recovery. In its complaint, PSP alleged claims of fraud, promissory estoppel, and unjust enrichment.[6]

Regarding the fraud claim, PSP alleged that Ford committed fraud by intentionally making false representations of material facts to PSP regarding his intention to pay according to the Settlement Agreement. In other words, it appears that PSP alleges that Ford committed fraud by saying he would perform under the terms of the contract. First, fraud must be pled with particularity, *Cooper v Auto Club Ins Ass'n*, 481 Mich 399, 414; 751 NW2d 443 (2008), citing MCR 2.112(B)(1), and PSP's general allegations with no specifics fall well short of meeting this particularity requirement. Second, PSP's fraud claim sounds in contract. "It is well settled that the gravamen of an action is determined by reading the complaint as a whole, and by looking beyond mere procedural labels to determine the exact nature of the claim." *Adams v Adams (On Reconsideration)*, 276 Mich App 704, 710-711; 742 NW2d 399 (2007). Here, PSP's fraud claim

---

[5] PSP did attempt to get a judgment against Service Anywhere, but that was based on violations of MCL 600.2952, which was successful.

[6] However, in its brief on appeal, PSP only relies on its claims of fraud and promissory estoppel. Accordingly, PSP has abandoned any argument related to the unjust enrichment cause of action, and we decline to address it. See *Prince v MacDonald*, 237 Mich App 186, 197; 602 NW2d 834 (1999).

purportedly arises from Ford's promise that he would perform under the contract.[7] As this Court has explained:

> With respect to [fraud interwoven with the breach of contract], the misrepresentations relate to the breaching party's performance of the contract and do not give rise to an independent cause of action in tort.
>
> > Such fraud is not extraneous to the contractual dispute among the parties, but is instead but another thread in the fabric of [the] plaintiffs' contract claim. . . . [It] is undergirded by factual allegations identical to those supporting their breach of contract counts. . . . This fraud did not induce the plaintiffs to enter into the original agreement nor did it induce them to enter into additional undertakings. It did not cause harm to the plaintiffs distinct from those caused by the breach of contract . . . . [*Huron Tool & Engineering Co v Precision Consulting Servs, Inc*, 209 Mich App 365, 373; 532 NW2d 541 (1995) (citations omitted).[8]]

Accordingly, Ford's failure to fulfill a promise to pay under the contract, even if done separately before the contract was executed, is indistinguishable from his failure to fulfill the actual contractual promise, which sounds in breach of contract. See *id*. Therefore, because PSP has not stated a viable fraud claim in its complaint, no default judgment based on fraud can be entered.

> Likewise, PSP's claim of promissory estoppel also fails.
>
> In order to invoke promissory estoppel, the party relying on it must demonstrate that (1) there was a promise, (2) the promisor reasonably should have expected the promise to cause the promisee to act in a definite and substantial manner, (3) the promisee did in fact rely on the promise by acting in accordance with its terms, and (4) and the promise must be enforced to avoid injustice. [*Crown Tech Park v D&N Bank, FSB*, 242 Mich 538, 548-549; 619 NW2d 66 (2000).]

However, "[p]romissory estoppel is not a doctrine designed to give a party to a negotiated commercial bargain a second bite at the apple in the event it fails to prove breach of contract."

---

[7] Although PSP does not use this term, this type of fraud is "fraud in the inducement," which is fraud that "occurs where a party materially misrepresents future conduct under circumstances in which the assertions may reasonably be expected to be relied upon and are relied upon." *Custom Data Solutions, Inc v Preferred Capital, Inc*, 274 Mich App 239, 242-243; 733 NW2d 102 (2006) (quotation marks and citations omitted).

[8] We note that the Michigan Supreme Court has adopted this rationale in *Gen Motors Corp v Alumni-Bunk, Inc*, 482 Mich 1080 (2008), where it agreed with the dissenting opinion of the corresponding Court of Appeals opinion, *Gen Motors Corp v Alumni-Bunk, Inc*, unpublished per curiam of the Court of Appeals, issued July 24, 2007 (Docket No. 270430) (KELLY, J., dissenting), which in turn relied heavily on *Huron Tool*.

*Gen Aviation, Inc v Cessna Aircraft Co*, 915 F2d 1038, 1042 (CA 6, 1990) (quotation marks and citation omitted). Thus, the written contract (the Settlement Agreement) at the center of this dispute makes PSP's promissory estoppel theory inapplicable. See *ParaData Computer Networks, Inc v Telebit Corp*, 830 F Supp 1001, 1007 (ED Mich, 1993) (holding that the plaintiff "cannot rely on promissory estoppel when it has a fully integrated contract for which it can seek redress").

Therefore, with no viably pled underlying claim, PSP cannot recover from Ford individually, see *Lindsley*, 189 Mich App at 702, the trial court did not abuse its discretion when it declined to enter a default judgment against him.[9]

Affirmed.

/s/ Thomas C. Cameron
/s/ Amy Ronayne Krause
/s/ Jonathan Tukel

---

[9] Because we have determined that PSP has failed to properly plead any viable causes of action against Ford, we need not address PSP's remaining arguments concerning (1) whether the trial court had the authority to consider whether the Settlement Agreement released Ford from any liability, and (2) if such authority did exist, whether the court erroneously interpreted and applied the Settlement Agreement.