McMANAMON v REDFORD CHARTER TOWNSHIP

Docket Nos. 262040, 263260. Submitted October 4, 2006, at Detroit. Decided December 5, 2006, at 9:05 a.m.

Daniel P. McManamon brought an action in the Wayne Circuit Court against Redford Charter Township, which was his former employer, and others, alleging a violation of the Employee Right to Know Act (ERKA), MCL 423.501 *et seq.*, in connection with the township's disclosure of employment information concerning him to a newspaper. The action was dismissed with regard to the defendants other than the township, and the court, Kaye Tertzag, J., subsequently granted the township summary disposition. The plaintiff appealed. The Court of Appeals, WHITE and B.B. MACKENZIE, JJ. (O'CONNELL, P.J., dissenting), reversed and remanded. 256 Mich App 603 (2003). The township again moved for summary disposition, which the trial court, Michael J. Callahan, J., denied. The jury returned a verdict in favor of the plaintiff, and the court denied the township's motion for a new trial. The trial court also awarded the plaintiff case-evaluation sanctions. In Docket No. 262040, the township appealed the judgment, and, in Docket No. 263260, the township appealed the order granting the sanctions. The Court of Appeals granted the township's motion to consolidate the appeals.

The Court of Appeals *held*:

1. The trial court did not err by denying the township summary disposition. MCL 423.506 provides that an employer cannot divulge a disciplinary action to a third party without mailing notice to the employee on or before the date of the disclosure. The statute does not forbid the disclosure; it merely requires that the employee receive notice of it. At issue in this case were statements by the township supervisor concerning the township's suspension of the plaintiff. A suspension constitutes a disciplinary action. The township argued that it did not divulge information concerning a disciplinary action because the newspaper reporter already had extensive information about the plaintiff's then-pending case, which included allegations of embezzlement. "Divulge," however, means to disclose or reveal something private, secret, or previously unknown. There was no evidence that the plaintiff's suspension was a matter of public record when the supervisor spoke with the

reporter. Because the township did not comply with the notice requirements of MCL 423.506, it violated ERKA by divulging the disciplinary action, and the trial court properly denied summary disposition. The township's claims that the supervisor's statements were authorized by the Freedom of Information Act or protected by the First Amendment are meritless. ERKA does not abrogate a constitutionally protected right of speech; it merely authorizes damages for failure to comply with the notice requirement before speaking.

2. The trial court, however, abused its discretion by denying the township's motion for a new trial. MCR 2.611(A)(1)(d) allows a trial court to grant a new trial if the verdict is clearly or grossly inadequate or excessive. The township argued that the evidence failed to show that its disclosure caused the plaintiff $100,000 in damages. Following publication of the newspaper article, the plaintiff felt upset and devastated and did not receive an offer for a job for which he was being considered. Even if the township had complied with ERKA, however, the newspaper would have published the fact of the plaintiff's suspension. The evidence suggested that it was this publication, not the township's failure to give notice, that caused the alleged harm. The plaintiff did not specifically testify that he was harmed by not receiving notice of the disclosure. Thus, the verdict lacked evidentiary support and was based on pure speculation and conjecture.

3. Should the issue arise on remand, damages under ERKA, as an issue of fact, are for the jury to decide.

4. Because the township has prevailed on appeal, the award of case-evaluation sanctions must be vacated.

Affirmed in part, reversed in part, case-evaluation sanctions order vacated, and case remanded.

HOEKSTRA, P.J., concurring, agreed with the majority that the trial court properly denied the township summary disposition and that a new trial is required to redress the verdict. He wrote separately, however, because his reasons for concluding that the verdict cannot stand differ from those of the majority. Because ERKA does not forbid the disclosure of disciplinary actions, but merely requires prior notice before divulging them, a plaintiff's damages are limited to those flowing from his or her inability to counter the disciplinary information divulged by the employer. The evidence, arguments of counsel, and instructions presented to the jury in this case, however, did not so limit the damages. ERKA also offers no protection against disclosure or discussion of adverse actions taken outside the employment context, but the plaintiff was permitted to testify extensively regarding the effect of the

embezzlement charge despite its lack of relevance to the issue of the township's failure to provide notice under ERKA. All of this fatally undermined the verdict's reliability. On retrial, the evidence and instructions should be tailored to compensate the plaintiff only for the consequences, if any, flowing from the township's failure to provide timely notice and the effect of the failure on the plaintiff's ability to counter the divulgence by explaining to the media or a prospective employer his disagreement with the information disclosed.

MASTER AND SERVANT — EMPLOYEE RIGHT TO KNOW ACT — JUDGMENTS — VERDICTS.

A verdict in an action brought under the Employee Right to Know Act for an employer's failure to give the employee notice of divulging a disciplinary action to a third party must be supported by evidence that the employer's failure to give notice caused the harm alleged (MCL 423.506).

*Gary T. Miotke* for Daniel P. McManamon.

*Cummings, McClorey, Davis & Acho, PLC* (by *Joseph Nimako*), for Redford Charter Township.

Before: HOEKSTRA, P.J., and METER and DONOFRIO, JJ.

PER CURIAM. In Docket No. 262040, defendant Charter Township of Redford appeals as of right from a judgment for plaintiff in this action involving the Employee Right to Know Act (ERKA), MCL 423.501 *et seq*. In Docket No. 263260, defendant appeals as of right from an "Order Granting Plaintiff's Motion for Statutory Costs and Attorney Fees as Well as Case Evaluation Sanctions." We affirm the trial court's denial of defendant's motion for summary disposition, reverse the trial court's denial of defendant's motion for a new trial, vacate the trial court's order granting sanctions, and remand this case for further proceedings.

Defendant first argues that the trial court erred in denying its motion for summary disposition because plaintiff failed to show that defendant violated ERKA. We disagree.

This Court reviews de novo a trial court's grant or denial of summary disposition. *McManamon v Redford Charter Twp*, 256 Mich App 603, 610; 671 NW2d 56 (2003). Statutory construction is a question of law that we also review de novo. *Twichel v MIC Gen Ins Corp*, 469 Mich 524, 528; 676 NW2d 616 (2004).

A motion filed under MCR 2.116(C)(10) tests the factual support for a claim, *Dressel v Ameribank*, 468 Mich 557, 561; 664 NW2d 151 (2003), and should be granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law, *Miller v Purcell*, 246 Mich App 244, 246; 631 NW2d 760 (2001). When the burden of proof at trial would rest on the nonmoving party, the nonmovant may not rely on mere allegations or denials in the pleadings, but must, by documentary evidence, set forth specific facts showing that there is a genuine issue for trial. *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996). A genuine issue of material fact exists when the record, viewed in the light most favorable to the nonmoving party, leaves open an issue on which reasonable minds could differ. *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). When deciding a motion for summary disposition under MCR 2.116(C)(10), a court must consider the pleadings, affidavits, depositions, admissions, and other documentary evidence filed in the action. MCR 2.116(G)(5); *Ritchie-Gamester v City of Berkley*, 461 Mich 73, 76; 597 NW2d 517 (1999).

Section 6 of ERKA, MCL 423.506, provides, in pertinent part:

> (1) *An employer* or former employer *shall not divulge a* disciplinary report, letter of reprimand, or other *disciplinary action to a third party*, to a party who is not a part of the employer's organization, or to a party who is not a part of

a labor organization representing the employee, *without written notice* as provided in this section.

(2) The written notice to the employee shall be by first-class mail to the employee's last known address, and shall be mailed on or before the day the information is divulged from the personnel record. [Emphases added.]

Thus, an employer cannot divulge a "disciplinary action" to a third party without mailing to the employee in question notice on or before the disclosure. Notably, the statute does not forbid the disclosure; it merely requires that the employee receive notice of the disclosure.

Section 11 provides remedies:

If an employer violates this act, an employee may commence an action in the circuit court to compel compliance with this act. . . . [T]he court shall award an employee prevailing in an action pursuant to this act the following damages:

(a) For a violation of this act, actual damages plus costs.

(b) For a wilful and knowing violation of this act, $200.00 plus costs, reasonable attorney's fees, and actual damages. [MCL 423.511.]

Defendant argues that Redford Township Supervisor Kevin Kelley's statements to the *Redford Observer* newspaper did not "divulge" disciplinary information, because the reporter already had extensive information about plaintiff's case. We disagree.

"Well-established principles guide this Court's statutory construction efforts. We begin our analysis by consulting the specific statutory language at issue." *Bloomfield Charter Twp v Oakland Co Clerk*, 253 Mich App 1, 10; 654 NW2d 610 (2002). This Court gives effect to the Legislature's intent as expressed in the statute's terms, giving the words of the statute their plain and ordinary meaning. *Willett v Waterford Charter Twp*, 271

Mich App 38, 48; 718 NW2d 386 (2006). When the language poses no ambiguity, this Court need not look beyond the statute or construe the statute, but need only enforce the statute as written. *Travelers Ins v U-Haul of Michigan, Inc*, 235 Mich App 273, 279; 597 NW2d 235 (1999). This Court does not interpret a statute in a way that renders any statutory language surplusage or nugatory. *Pohutski v City of Allen Park*, 465 Mich 675, 684; 641 NW2d 219 (2002).

Because the statute at issue here does not define "divulge," we use a dictionary definition. *Pierce v City of Lansing*, 265 Mich App 174, 178; 694 NW2d 65 (2005). *Random House Webster's College Dictionary* (1997) defines "divulge" to mean "to disclose or reveal (something private, secret, or previously unknown)." Thus, to trigger the notice requirement, the employer must disclose or reveal something private, secret, or previously unknown.

The July 3, 1997, *Redford Observer* article quoted Kelley as stating that " '[t]he issue [of the embezzlement] is under review' " and stated: "McManamon was suspended due to problems in the performance of his day-to-day duties beyond the embezzlement charge, Kelley said." The fact that Kelley disclosed to the *Redford Observer* that plaintiff was suspended constitutes a disclosure of a "disciplinary action," MCL 423.506(1), because a suspension qualifies as a disciplinary action. There was no evidence that at the time Kelley spoke with *Redford Observer* reporter Bill Casper, plaintiff's suspension was already a matter of public record;[1] therefore, Kelley divulged that fact to Casper. Because there was no evidence that defendant

---

[1] By July 1, 1997, the embezzlement charge against plaintiff was a matter of public record. However, the indictment of plaintiff was a *reason* for his suspension; it was not the "disciplinary action" itself.

complied with the notice requirements of ERKA, the divulging of a disciplinary action against plaintiff, without giving plaintiff notice, was a violation of the act. The trial court did not err in denying summary disposition to defendant.

Defendant argues that public policy favors allowing public officials to give the press and the public full and complete information regarding public acts of public officials that are of legitimate public interest. Defendant relies on the Freedom of Information Act (FOIA), MCL 15.231 *et seq.* MCL 15.231(2) states that it is the public policy of the state that all persons are entitled to full and complete information regarding the affairs of government and the official acts of public officials. However, Casper had not submitted a FOIA request to Kelley regarding plaintiff. Therefore it cannot be held that FOIA authorized Kelley's divulgence without notice.

Moreover, defendant's argument misconstrues plaintiff's claim. Plaintiff's ERKA claim is not that Kelley had no right to divulge to the press information regarding the disciplinary action taken against plaintiff. Rather, the claim is that Kelley had no right to divulge the information *without giving notice to plaintiff* in accordance with ERKA. MCL 423.506(1). In other words, Kelley was free to make the disclosure to the press and the public, but defendant was required, before or on the same day as divulging the information, to mail notice to plaintiff. MCL 423.506(2).

Defendant next argues that Kelley's statements to the press were constitutionally protected under the First Amendment and that ERKA should not be construed to abrogate a constitutionally protected right. This argument lacks merit. Kelley's statements to the press may indeed be constitutionally protected, and it is

assumed that they are. However, that is beside the point. Plaintiff's claim is not that Kelley had no right to make the statements, but that Kelley was required by ERKA to give plaintiff notice of the divulgence. MCL 423.506. Therefore, ERKA is not being interpreted to abrogate a constitutionally protected right. Rather, ERKA is being interpreted, in accordance with its plain language, to authorize plaintiff to receive damages for Kelley's failure to comply with the notice requirement.

Because (1) Kelley did not comply with ERKA's notice requirement, (2) Kelley divulged to a third party a "disciplinary action" taken against plaintiff (his suspension), and (3) ERKA does not abrogate Kelley's right of speech, the trial court correctly denied summary disposition for defendant regarding plaintiff's ERKA claim.

Defendant next argues that the trial court erred in denying its motion for a new trial because the jury's verdict was clearly excessive and unsupported by the evidence. We agree.

A trial court's decision regarding a motion for a new trial is reviewed for an abuse of discretion. *Morinelli v Provident Life & Accident Ins Co*, 242 Mich App 255, 261; 617 NW2d 777 (2000). An abuse of discretion occurs when a court chooses an outcome that is not within the principled range of outcomes. *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006). The abuse of discretion standard is more deferential than review de novo, but less deferential than the standard of review articulated in *Spalding v Spalding*, 355 Mich 382; 94 NW2d 810 (1959).[2] *Maldonado, supra* at 388.

---

[2] In *Spalding, supra* at 384-385, the Supreme Court held that an abuse of discretion occurs when the result reached by a court is "so palpably and grossly violative of fact and logic that it evidences not the exercise of will

MCR 2.611(A)(1) provides: "A new trial may be granted . . . for any of the following reasons: . . . (d) A verdict clearly or grossly inadequate or excessive." Defendant argues that the evidence failed to show that defendant's failure to provide notice of the divulgence of the disciplinary action caused plaintiff $100,000 in damages.

Speculation in proving causation is prohibited. See, e.g., *Skinner v Square D Co*, 445 Mich 153, 166; 516 NW2d 475 (1994), and *Ensink v Mecosta Co Gen Hosp*, 262 Mich App 518, 524-525; 687 NW2d 143 (2004). The proof must " 'amount to a reasonable likelihood . . . rather than a possibility. The evidence need not negate all other possible causes, but . . . must exclude other reasonable hypotheses with a fair amount of certainty.' " *Skinner, supra* at 166 (citation omitted).

Plaintiff's evidence failed to exclude, to a reasonable amount of certainty, other reasonable hypotheses of causation of his damages. The evidence suggests that it was the *publication by* the *Redford Observer*, not the failure to give notice of the divulgence to the *Redford Observer*, that caused plaintiff (1) to receive no offer from the Livonia Hockey Association and (2) to feel devastated. Plaintiff testified that he felt upset "[b]ecause I was not notified that this was coming out in the paper." The article relating to his discharge made plaintiff "very upset," in particular because a front-page photograph depicted him in handcuffs. In our opinion, plaintiff simply never proved at trial that he was harmed *by failing to receive notice* of the divulgence to the *Redford Observer*. Indeed, plaintiff never testified

---

but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias."

at trial, with specificity, that he was harmed by not receiving notice of the divulgence to the *Redford Observer*.[3]

One of the articles about plaintiff was discussed by the board members of the Livonia Hockey Association before the board's job interview of plaintiff. The board did not feel comfortable offering plaintiff a job under the circumstances. The major deciding factors were the criminal charges "and the fact that he had been terminated by the township of Redford." The *Redford Observer* would nonetheless have published the fact of plaintiff's termination even if defendant had complied with the notice requirement of MCL 423.506(2).[4] Therefore, plaintiff still would not have received an offer from the Livonia Hockey Association, even if defendant had complied with the notice requirement.

There was inadequate evidence that the failure to give notice of the divulgence caused the harm of which plaintiff complains. In other words, there was no evidence that, had defendant complied with MCL 423.506(2), plaintiff (1) would not have been rejected by the Livonia Hockey Association or (2) would not have felt devastated by the publications of the disciplinary action in the *Redford Observer*. The verdict was based on pure speculation and conjecture.

Because there was no evidence that the failure to give notice of the divulgence of the disciplinary action caused harm to plaintiff, the verdict lacked evidentiary

---

[3] We note that in a prior appeal in this case, this Court stated that "the notice is intended to provide the employee with notice of the disclosure so that the employee can counter such reports with which there is disagreement." *McManamon, supra* at 613 n 5.

[4] Indeed, there is no evidence that, had defendant complied with MCL 423.506(2), the *Redford Observer* would not have published the information about the disciplinary action or the criminal charges against plaintiff.

support. Because the verdict was not supported by the evidence, the trial court abused its discretion in failing to grant defendant's motion for a new trial.

Defendant next argues that the trial court erred in denying its motion for a new trial because the trial court allowed the jury to assess damages, as opposed to the trial court doing so. This issue is largely mooted by our resolution of the prior issue. *Ewing v Bolden*, 194 Mich App 95, 104; 486 NW2d 96 (1992). However, because it may arise on remand, we will address the issue briefly. Contrary to defendant's argument, ERKA does not require that the trial court determine the amount of damages in an ERKA case. Instead, ERKA merely states that the court "shall award" damages. MCL 423.511. Making an award of damages is different from determining the amount of damages. Damages are an issue of fact, and questions of fact are, of course, generally decided by the trier of fact—in this case, the jury. See, e.g., *Ensink, supra* at 525. Given the lack of statutory language to the contrary, the amount of damages here is for the jury to decide.[5]

Defendant next argues that the trial court's award of case-evaluation sanctions cannot be sustained. Because defendant has prevailed, in pertinent part, in this appeal, we agree. "[I]t is the ultimate verdict that the parties are left with after appellate review is complete that should be measured against the mediation evaluation to determine whether sanctions should be imposed on a rejecting party pursuant to MCR 2.403(O)." *Keiser v Allstate Ins Co*, 195 Mich App 369, 374-375; 491 NW2d

---

[5] Defendant also argues that the damages awarded in this case were not properly awardable because plaintiff did not first show that defendant failed to abide by a court order compelling compliance with ERKA and because the damages awarded were not incurred in connection with an action to compel compliance. However, this argument was rejected during the earlier appeal in this case. See *McManamon, supra* at 609-614.

581 (1992). Because we reverse the trial court's denial of defendant's motion for a new trial and remand for a new trial, we also vacate the trial court's award of case-evaluation sanctions.

We affirm the trial court's denial of defendant's motion for summary disposition, reverse the trial court's denial of defendant's motion for a new trial, vacate the trial court's order granting sanctions, and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

HOEKSTRA, P.J. (*concurring*). I concur in the majority's conclusion that summary disposition in favor of defendant was properly denied by the trial court, but a new trial is required to redress the verdict in this matter. I write separately because my reasons for concluding that the verdict rendered by the jury cannot stand differ somewhat from those espoused by the majority.

This case arises from statements made by Redford Township Supervisor Kevin Kelley to a local newspaper regarding the suspension and eventual termination of plaintiff from his employment as manager of an ice arena operated by the township. Alleging a failure to provide him notice of the comments and that certain of Kelley's statements were untrue, plaintiff filed the instant suit seeking damages for defamation, false-light publicity, disclosure of embarrassing facts, and violation of the Employee Right to Know Act (ERKA), MCL 423.501 *et seq.* Before trial, however, defendants successfully sought summary disposition of all but the question of damages for plaintiff's claim that the township had violated § 6 of ERKA, which provides in relevant part:

> (1) An employer or former employer shall not divulge a disciplinary report, letter of reprimand, or other disciplin-

ary action to a third party, to a party who is not a part of the employer's organization, or to a party who is not a part of a labor organization representing the employee, without written notice as provided in this section.

(2) The written notice to the employee shall be by first-class mail to the employee's last known address, and shall be mailed on or before the day the information is divulged from the personnel record. [MCL 423.506.]

Thus, at the time of trial all that remained to be decided by the jury was the question of the damages, if any, suffered by plaintiff as a result of Kelley's failure to timely notify plaintiff of the divulgence of employment-related disciplinary actions taken against him, i.e., plaintiff's suspension and eventual termination. At the trial on this question, plaintiff offered into evidence articles published by the *Redford Observer* on July 3 and 6, 1997, in which Kelley was quoted as having disclosed that plaintiff had been suspended and subsequently terminated "due to problems in the performance of his day-to-day duties" and a recent charge of misdemeanor embezzlement. Subsequent articles reporting the circumstances and procedural posture of the embezzlement charge, of which plaintiff was ultimately acquitted, were also offered into evidence by plaintiff. These later articles, published in the *Observer* on July 31 and September 4, 1997, also reiterated or otherwise reported statements by Kelley concerning plaintiff's termination "due to a number of performance problems."

Citing these articles, plaintiff testified at trial that Kelley had "devastated" his personal and professional reputation. As support for this contention, plaintiff explained that following his suspension from employment with the township, he applied for a position as arena manager for the Livonia Hockey Association. Plaintiff testified that his first meeting with the asso-

ciation's board went quite well and that he fully expected to be offered the position after being called to meet with the board a second time. At this second meeting, however, plaintiff was confronted by the board with the July 6, 1997, article regarding his discharge from employment with the township and then-pending criminal charge. Plaintiff testified that he was not aware that the article had been published, that he was very upset when he learned that disciplinary information had been released to the press without his having been notified, and that Kelley's statements regarding his suspension and termination were "totally embarrassing and humiliating." Plaintiff further testified that he explained to the board that he had not been given a chance to respond to the criminal and performance allegations reported in the article, which he informed the board were false and "unsubstantiated." Despite his explanation, however, the board indicated concern about the "adverse publicity" his hiring would bring to the association and, ultimately, offered the position to a less-qualified applicant.

Plaintiff thereafter found it difficult to find and hold employment comparable in responsibility and pay to that previously held by him with the township. Plaintiff explained that although currently employed in a comparable position, he had worked only part-time or at inferior positions during the three years before obtaining his current position as manager of the Kensington Ice House. In connection with this testimony, plaintiff offered evidence regarding the pay he received for these jobs and testified that he believed he would have earned considerably more during the three-year period between his firing and his obtaining a position at Kensington had he been hired by the Livonia Hockey Association.

Following the close of evidence, counsel for plaintiff argued to the jury that one of the issues before it was whether "the divulgence of the disciplinary information [led] to the loss of job opportunity[.]" Citing plaintiff's testimony regarding his meetings with the board of the Livonia Hockey Association, counsel asserted that the answer to this question was yes, because it was clear that the articles cost plaintiff a job with Livonia. Thus, counsel argued, plaintiff was entitled to damages for lost income as well as damaged reputation, embarrassment, and humiliation resulting from the divulgence by Kelley. As support for this argument, counsel asserted that the four articles published by the *Observer* "made [plaintiff] look like some corrupt, non-performing, incompetent manager." Counsel further asserted that Kelly had a choice to either "talk [or] keep his mouth shut until someone complied with the [ERKA]" and that he "chose to violate the law."

At the close of trial, the court instructed the jury that it was to determine the amount of damages, if any, suffered by plaintiff as a result of the township's violation of ERKA. However, although further instructing the jury that such damages could include loss of income, embarrassment, humiliation, mortification, and damage to reputation, the court did not define or otherwise explain to the jury the parameters of the violation at issue. My concern regarding the reliability of the jury's verdict lies with both this instruction and the evidence presented and relied on by plaintiff in arguing the damages question.

As recognized by the majority, § 6 of ERKA does not forbid the disclosure of employment-related disciplinary action, but merely prohibits an employer from divulging such information to a third party without providing the employee with timely written notice of

the disclosure on or before the date the information is divulged. Thus, as this Court previously recognized in this matter, the notice requirement of § 6 of ERKA cannot be read to permit an employee to prevent divulgence of the information:

> Clearly, the notice was not intended to allow the employee to prevent the disclosure, because it would be insufficient for that purpose. Rather, the notice is intended to provide the employee with notice of the disclosure so that the employee can counter such reports with which there is disagreement. [*McManamon v Redford Charter Twp*, 256 Mich App 603, 613 n 5; 671 NW2d 56 (2003).]

Thus, in my view, the damages to which a plaintiff seeking redress for violation of the notice requirement of § 6 of ERKA is entitled are limited to those flowing from his or her inability to counter the disciplinary information divulged by the employer. Here, however, the evidence, arguments, and instructions presented to the jury did not so limit the damages. Instead, plaintiff was permitted to offer testimony and evidence regarding his embarrassment and humiliation upon learning of the disclosure and his belief that Kelley's statements "devastated" his career. The statute does not, however, require or guarantee that the employee have knowledge of a divulgence before the employer divulges the information. Rather, the statute requires only that the employer send the employee written notice of the fact of the divulgence "on or before the day the information is divulged . . . ." MCL 423.506. Moreover, the statute offers no protection for the consequences of a divulgence beyond protection for the effect a failure to provide such notice has on the employee's ability to counter information with which he disagrees. *McManamon, supra* at 613 n 5.

The statute similarly offers no protection against
disclosure or discussion of adverse action taken outside
the context of employment. Plaintiff was nonetheless
permitted to testify extensively at trial regarding the
effect of the misdemeanor embezzlement charge, in-
cluding Kelley's comments concerning the charge and
subsequent acquittal, on his person and career. Testi-
mony and evidence regarding the embezzlement charge
was, however, irrelevant to the question of the effect of
the township's failure to provide notice on plaintiff's
ability to counter the information.

Moreover, as noted above, the trial court failed to
instruct the jury concerning the nature of the violation
at issue, i.e., the failure to provide plaintiff with timely
written notice of the divulgence of disciplinary informa-
tion. Without such an instruction, the jury could not
accurately understand and deliberate the damages
question. This error, when combined with the evidence
submitted and the arguments made by plaintiff, under-
mines the reliability of the jury's verdict.

In sum, the reliability of the verdict was fatally
undermined by the introduction of irrelevant evidence
and argument pertaining to plaintiff's upset and hu-
miliation regarding the embezzlement charge and
Kelley's comments regarding that charge that were
made to the media. The embezzlement charge and the
circumstances regarding its prosecution, along with
Kelley's comments regarding the charge, do not consti-
tute an adverse employment event and are thus not
compensable as a violation of § 6 of ERKA. Further,
because divulgence of an adverse employment event is
not prohibited by that section, the fact that Kelley's
comments were made to a media representative and
were subsequently published to the community at large
is itself not compensable. Thus, on retrial, the evidence

and instructions should be tailored to compensate plaintiff only for the consequences, if any, flowing from the township's failure to initiate notice of Kelley's comments regarding the fact of plaintiff's suspension and termination "on or before the day" of those divulgences and the effect of such failure on plaintiff's ability to counter the divulgences by explaining to the media or a prospective employer his disagreement with that information.