# STATE OF MICHIGAN

# COURT OF APPEALS

PRIORITY HEALTH,

        Petitioner-Appellant,

v

DEPARTMENT OF TREASURY,

        Respondent-Appellee.

UNPUBLISHED
October 30, 2018

No. 341120
Michigan Tax Tribunal
LC No. 16-000785-TT

---

PRIORITY HEALTH INSURANCE COMPANY,

        Petitioner-Appellant,

v

DEPARTMENT OF TREASURY,

        Respondent-Appellee.

No. 341199
Michigan Tax Tribunal
LC No. 16-000784-TT

---

Before: CAVANAGH, P.J., and MARKEY and LETICA, JJ.

PER CURIAM.

In these consolidated appeals,[1] petitioners Priority Health and Priority Health Insurance Company appeal as of right from the November 14, 2017 corrected final opinion and judgment issued by the Tax Tribunal, which corrected an October 31, 2017 order[2] granting respondent, Department of Treasury's, motion for reconsideration and motion for summary disposition pursuant to MCR 2.116(C)(10) (no genuine issue of material fact). We reverse and remand for further proceedings.

---

[1] See *Priority Health v Dep't of Treasury*, unpublished order of the Court of Appeals, entered November 28, 2017 (Docket Nos. 341120 and 341199). These matters were also consolidated for proceedings in the Tax Tribunal.

[2] The correction was for the limited purpose of stating the proper appeal rights.

## I. FACTS

Petitioner Priority Health is a nonprofit Michigan health maintenance organization, and petitioner Priority Health Insurance Company is a wholly owned subsidiary of Priority Health. Petitioners provide insurance coverage for medical, hospital, prescription drug, and other healthcare services to their members, most but not all of whom reside in Michigan. This case specifically pertains to prescription drug coverage.

In accordance with industry practice, petitioners contracted with third-party pharmacy benefit managers (PBMs) to administer and coordinate their prescription drug benefit program. During the relevant tax period, petitioners used Argus Health Systems, Inc. as their PBM to manage pharmacy claim payments. Thus, when an insured member filled a prescription at a pharmacy, the pharmacy billed Argus directly, Argus would pay the pharmacy's claim, and then submit the claim to petitioners for reimbursement. Petitioners also contracted with Express Scripts Holding Company as their primary PBM for management of pharmaceutical rebates. In addition to Express Scripts, petitioners contracted with ICORE and CMDI to administer rebates on select prescription drugs. Once petitioners provided Express Scripts, ICORE, or CMDI with the details of their paid claims, the PBMs would examine the claims to determine if they qualified for a rebate. If a claim qualified, the drug manufacturer would pay the rebate to the PBM, which in turn paid the rebate to petitioners. Petitioners allege that pharmaceutical rebates are a common practice within the health insurance industry and enable a health insurance company to reduce its overall pharmacy spending, thus lowering the total cost of insurance to its members.

In 2011, the Legislature enacted the Health Insurance Claims Assessment Act (HICAA), MCL 550.1731 *et seq*. The HICAA imposes a 1% tax on all "paid claims" made by health insurance companies in Michigan. MCL 550.1733(1). Pertinent to this case, "paid claims" is defined by MCL 550.1732(s) as "*actual payments, net of recoveries*, made to a health and medical services provider . . . by a carrier, third party administrator, or excess loss or stop loss carrier." (Emphasis added). The genesis of this case is a dispute between petitioners and respondent regarding the meaning of "net of recoveries" in MCL 550.1732(s) and how pharmaceutical rebates should be treated under that definition.

Under § 4 of HICAA, health insurance carriers must file quarterly tax returns with respondent, on forms provided by respondent. MCL 550.1734(1). On their quarterly tax returns,[3] petitioners set forth as gross paid claims all of the gross payments petitioners made to healthcare providers, including pharmacies, in Michigan for Michigan residents. Petitioners reduced the gross claims by three types of "recoveries"—subrogation payments, coordination of benefits, and pharmacy rebates. As to the pharmacy rebates, to arrive at the net claims,

---

[3] Although the quarterly returns were not produced for review by this Court, the manner in which the returns were filed does not appear to be in dispute.

petitioners estimated the amount of rebates attributable to taxable claims[4] and deducted that dollar amount from its "tax base" or total paid claims.

In August 2013, respondent audited petitioners to verify whether they had accurately reported their HICAA tax liability for 2012. In the course of the audit, respondent reviewed the amounts that petitioners claimed as "recoveries." See MCL 550.1732(s). The auditor eventually removed the entire pharmacy rebate amounts that petitioners had subtracted to arrive at their "paid claims," reasoning that the pharmacy rebates were not recoveries because they did not affect the actual amount paid to the provider. As a result of the audit, respondent assessed an additional $135,971 tax liability against Priority Health and an additional $21,971 against Priority Health Insurance Company.[5] Respondent mailed out an intent to assess for these amounts to each petitioner. Following an informal conference, a hearing referee agreed with petitioners' interpretation of the HICAA language and recommended that the intent to assess issued to each petitioner be cancelled. Respondent disagreed and issued final assessments in the amounts originally determined in the audit.

Petitioners challenged the final assessments before the Tax Tribunal. Petitioners argued that the tax base for the HICAA is "paid claims," which is defined as "actual payments, net of recoveries." Petitioners acknowledged that the term "recoveries" was not defined and argued that "recoveries" are not deductions or credits, but a component of the tax base, and that the pharmaceutical rebates are rightly subtracted from the gross claims paid. Approximately one year later, both parties filed motions for summary disposition.

The main issue before the tribunal was the proper interpretation of the term "net of recoveries" in MCL 550.1732(s). In making their respective arguments, the parties relied largely on the rules of statutory construction, with respondent relying primarily on the "last antecedent" rule.[6] Respondent argued that the phrase "net of recoveries" in MCL 550.1732(s) solely modified the preceding phrase "actual payments." Thus, according to respondent, in order to use a pharmaceutical rebate as a "recovery" from gross claims, petitioners had to be able to link each specific pharmaceutical rebate to a specific paid claim. Respondent claimed that it was entitled to summary disposition pursuant to MCR 2.116(C)(10) because the documentary evidence showed that petitioners were unable to establish this claim-specific link.

---

[4] The HICAA tax applies only to Michigan claims, i.e., claims paid on behalf of a Michigan member in Michigan.

[5] Interest was added to these amounts.

[6] "The 'last antecedent rule' of statutory construction provides that a modifying or restrictive word or clause contained in a statute is confined solely to the immediately preceding clause or last antecedent, unless something in the statute requires a different interpretation." *Stanton v Battle Creek*, 466 Mich 611, 616; 647 NW2d 508 (2002).

The tribunal denied both motions for summary disposition, concluding in pertinent part that: (1) "recoveries" are deductions and must be subtracted from an actual claim paid in order to reduce the tax base; (2) a pharmaceutical rebate must be linked to an actual pharmacy payment in order to be claimed as a recovery; and (3) a pharmaceutical rebate can be traced to an actual claim payment made by petitioners if proper records are used. Most important to this appeal, the Tax Tribunal found that petitioners presented sufficient evidence that the rebates could be traced back to specific claims paid to avoid summary disposition. The tribunal stated:

> [T]he Tribunal finds that Petitioners have presented sufficient allegations that the claims [sic; rebates] *can* be traced back to the actual payment. Further, Petitioners have set forth the contention that rebates from ICORE and CMDI can be traced back to demonstrate that they relate to a taxable payment and that those from Express Scripts *may* be able to be traced back. Overall, the Tribunal finds that Petitioners have the burden to demonstrate they were entitled to the deductions they claimed and the Tribunal finds that the asserted claim may be supported by evidence at trial. As such, there are genuine issues of material fact remaining . . . and the motions under (C)(10) are denied.[48]
>
> ───────────────────────────────────────────────
>
> [48] See *Arbelius v Poletti*, 188 Mich App 14; 469 NW2d 436 (1991).
>
> ───────────────────────────────────────────────
>
> [Some citations omitted.]

As record support, the tribunal pointed to portions of the deposition testimony of Nicholas Gates, petitioners' vice-president and controller, and to allegations contained in petitioners' response to respondent's dispositive motion.

Respondent filed a motion for reconsideration, claiming that the tribunal had erred in denying its motion for summary disposition because it wrongly relied on the standard of review set forth in *Arbelius*, 188 Mich App at 18. Specifically, respondent claimed that the tribunal erred by implying that petitioners only had to "promise to present documentation" that could support their claims at trial. Thereafter, the tribunal, through a different judge, issued an order granting respondent's motion for reconsideration and granting summary disposition in respondent's favor, concluding that the first tribunal judge had erred in allowing petitioners to merely promise to offer factual support for their claims at trial, rather than producing documentary evidence to affirmatively show a genuine issue of fact for trial. Based on the standard articulated in *Lowrey v LMPS & LMPJ, Inc*, 500 Mich 1; 890 NW2d 344 (2016), *Smith v Globe Life Ins Co*, 460 Mich 446; 597 NW2d 28 (1999), and *Quinto v Cross & Peters Co*, 451 Mich 358; 547 NW2d 314 (1996), the second Tax Tribunal judge concluded that petitioners had failed to establish that there were genuine issues of material fact remaining.

## II. STANDARD OF REVIEW

Our review of decisions made by the Tax Tribunal is limited. "In the absence of an allegation of fraud, this Court's review of a Tax Tribunal decision is limited to determining whether the tribunal committed an error of law or adopted a wrong principle." *Mich Milk Producers Ass'n v Dep't of Treasury*, 242 Mich App 486, 490; 618 NW2d 917 (2000). "The tribunal's factual findings will not be disturbed as long as they are supported by competent, material, and substantial evidence on the whole record." *Id.* at 490-491.

## III. ANALYSIS

The Tax Tribunal erred by reversing the previous order denying both parties' motions for summary disposition and entering an order granting respondent's motion for summary disposition. The tribunal reversed its prior order on grounds that an improper and "overruled" legal standard for a MCR 2.116(C)(10) motion was used. We disagree. The first order set forth the correct standard of review, stating, in pertinent part:

> Summary disposition under MCR 2.116(C)(10) tests the factual support for a claim and must identify those issues regarding which the moving party asserts there is no genuine issue of material fact. Under subsection (C)(10), a motion for summary disposition will be granted if the documentary evidence demonstrates that there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. In the event, however, it is determined that an asserted claim can be supported by evidence at trial, a motion under (C)(10) will be denied.
>
> The Michigan Supreme Court has established that a court must consider affidavits, pleadings, depositions, and documentary evidence filed by the parties in the light most favorable to the non-moving party. The moving party bears the initial burden of supporting its position by presenting its documentary evidence for the court to consider. The burden then shifts to the opposing party to establish that a genuine issue of disputed fact exists. Where the burden of proof at trial on a dispositive issue rests on a non-moving party, the non-moving party may not rely on mere allegations or denials in pleadings but must go beyond the pleadings to set forth specific facts showing that a genuine issue of material fact exists. If the opposing party fails to present documentary evidence establishing the existence of a material factual dispute, the motion is properly granted. [Citations omitted.]

Moreover, the first order cited the very cases that the second order claims were ignored, namely, *Smith*, 460 Mich at 454-455; *Quinto*, 451 Mich at 362; *McCart v J Walter Thompson USA, Inc*, 437 Mich 109, 115; 469 NW2d 284 (1991); and *McCormic v Auto Club Ins Ass'n*, 202 Mich App 233, 237; 507 NW2d 741 (1993). We note that the second tribunal judge was correct in stating that after *Arbelius* the Michigan Supreme Court clarified the legal standard for dispositive motions under MCR 2.116(C)(10) in a series of cases. In *Smith*, 460 Mich at 455 n 2, the Court stated:

-5-

We take this occasion to note that a number of recent decisions from this Court and the Court of Appeals have, in reviewing motions for summary disposition brought under MCR 2.116(C)(10), erroneously applied standards derived from *Rizzo v Kretschmer*, 389 Mich 363; 207 NW2d 316 (1973). These decisions have variously stated that a court must determine whether a record "might be developed" that will leave open an issue upon which reasonable minds may differ ... and that summary disposition under MCR 2.116(C)(10) is appropriate only when the court is satisfied that "it is impossible for the nonmoving party to support his claim at trial because of a deficiency that cannot be overcome."

These *Rizzo*-based standards are reflective of the summary judgment standard under the former General Court Rules of 1963, not MCR 2.116(C)(10). *Under MCR 2.116, it is no longer sufficient for plaintiffs to promise to offer factual support for their claims at trial.* As stated, a party faced with a motion for summary disposition brought under MCR 2.116(C)(10) is, in responding to the motion, *required to present evidentiary proofs creating a genuine issue of material fact for trial.* Otherwise, summary disposition is properly granted. [Emphasis added; citations omitted.]

Similarly, in *Quinto*, 451 Mich at 361-362, the Michigan Supreme Court stated:

MCR 2.116 is modeled in part on Rule 56(e) of the Federal Rules of Civil Procedure. As pointed out by Justice Brennan in *Celotex v Catrett*, 477 US 317; 106 S Ct 2548; 91 L Ed 2d 265 (1986), the initial burden of production is on the moving party, and the moving party may satisfy the burden in one of two ways.

First, the moving party may submit affirmative evidence that negates an essential element of the nonmoving party's claim. Second, the moving party may demonstrate to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim. If the nonmoving party cannot muster sufficient evidence to make out its claim, a trial would be useless and the moving party is entitled to summary judgment as a matter of law.

[Footnote and citations omitted.]

The *Quinto* Court also reiterated that "[w]here the burden of proof at trial on a dispositive issue rests on a nonmoving party, the nonmoving party may not rely on mere allegations or denials in pleadings, but must go beyond the pleadings to set forth specific facts showing that a genuine issue of material fact exists." *Quinto*, 451 Mich at 362.

With these standards in mind, we hold that summary disposition for respondent was improper, as petitioners did present evidence demonstrating there was a genuine issue of material fact for trial. Gates testified that petitioners used a reasonable estimate to determine the portion of pharmaceutical rebates that related to taxable claims and could therefore be considered

"recoveries." In an attempt to clarify whether petitioners were capable of tracing the rebates to specific claims as required by the statute, respondent's attorney asked:

> *Q.* . . . So pharmacy rebates, fast forwarding to my situation where I go to get Lipitor filled and that claim is fulfilled and a rebate is paid – and Priority Health receives a rebate, can that – is that rebate directly traceable to my claim paid?
>
> *A. Yes, it would be.* However, we do not have the detail to do that.
>
> * * *
>
> *Q.* Yeah, I guess in the question I asked I'm trying to verify whether or not these pharmacy rebates can go directly back to a claim paid on an individual, for example, myself.
>
> *A. To answer that question, yes, they could.*
>
> *Q.* But Priority Health does not do that, correct?
>
> *A.* Priority Health does not have the detail so it cannot tie exactly back.
>
> * * *
>
> *Q.* And why don't you have the ability to tie it [the rebates] back?
>
> *A.* The direct – so let me clarify. *For ICORE we would have the detail.* For Express Scripts, which is the large amount of our rebates, Express Scripts has the direct contracts with the drug manufacturers and don't provide us with the claim-by-claim level detail for all of those drugs. [Emphasis added.]

Although the evidence is not overwhelming, we believe Gates's deposition testimony was sufficient to establish the existence of a material factual dispute when viewed in the light most favorable to petitioners. See *Smith*, 460 Mich at 454. Furthermore, the accounting required in this case to determine the precise dollar amount that petitioner can set off against its total paid claims for HICAA taxation purposes is akin to the computation of damages in a regular civil court case, which is usually held to be an issue of fact. *McManamon v Redford Twp*, 273 Mich App 131, 141; 730 NW2d 757 (2007) ("Damages are an issue of fact, and questions of fact are . . . generally decided by the trier of fact . . . ."). The amount of tax that petitioner has to pay under HICAA is a type of damages that involves mathematical computation. This is best done by the fact-finder at a trial where the methodology on both sides can be vetted and specific calculations analyzed. Even if Express Scripts does not provide petitioners with the records pertaining to the pharmaceutical rebates that it collects,[7] Gates testified that, at minimum,

---

[7] In their brief on appeal, petitioners allege that they have obtained the necessary rebate detail from their PBMs, but we note that the records were not produced for this Court's review, nor

ICORE produces the records pertaining to the rebates that it acquires. Petitioners could therefore obtain at least a partial setoff.

Reversed and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Mark J. Cavanagh
/s/ Jane E. Markey
/s/ Anica Letica

were they part of the tribunal's record. In any event, it will be up to the tribunal, and not this Court, to determine whether the documents obtained by petitioners are sufficient to support their calculations of recoveries or paid claims.