*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

TRG ADVISORY, LTD,

        Plaintiff/Counterdefendant-
        Appellant/Cross-Appellee,

v

M.G. REALTY, LLC,

        Defendant/Counterplaintiff-
        Appellee/Cross-Appellant.

UNPUBLISHED
July 15, 2025
2:15 PM

No. 367647
Oakland Circuit Court
LC No. 2021-191007-CB

Before: CAMERON, P.J., and REDFORD and GARRETT, JJ.

PER CURIAM.

In this breach of contract action, plaintiff/counterdefendant, TRG Advisory, Ltd (TRG), appeals as of right the judgment entered in its favor following trial. TRG does not challenge the jury's verdict, nor the award of damages, but appeals the trial court's later order denying its posttrial motion for attorney fees and expenses. Defendant/counterplaintiff, M.G. Realty, LLC (M.G. Realty), cross-appeals the trial court's order denying its motion for judgment notwithstanding the verdict (JNOV). Finding no errors warranting reversal, we affirm.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

M.G. Realty owns a commercial office building (the Building) on Park Street in the city of Birmingham, Michigan. In 2013, TRG agreed to rent from M.G. Realty Suite 208, which totaled approximately 2,400 square feet of usable floor area located on the second floor of the Building. The lease was to commence on March 28, 2013, and end on March 27, 2018. However, the lease also included two five-year renewal options. The lease, in general, required that M.G. Realty maintain the common areas of the Building in good order and condition. The lease also provided that M.G. Realty would "furnish the demised premises with (a) heat, ventilation and air conditioning to the extent required for the occupancy of demised premises to standards of comfort, and during such hours, as reasonably determined by Landlord for the Building . . . ."

TRG's founder, sole shareholder, and president, Gerald Reinhart, testified during trial that TRG was "primarily in the commercial real estate investment and development advisory services

-1-

business." TRG's business operations included, among other things, leasing commercial property and subletting the property out. Further, TRG's business model contemplated subletting to individuals to create a collaborative environment for various professionals. To this end, Reinhart sought to include in the 2013 lease the option to rent an additional adjacent suite in the Building should it become available during TRG's lease term. The parties negotiated and included in the 2013 lease the following terms relative to the adjacent suite:

30 Right to Expand

(a) Landlord hereby grants Tenant a right of first right of refusal beginning on or after January 1, 2014 with respect to the suite adjacent to and directly south of the premises constituting approximately 1400 rentable square feet (the "Adjacent Suite") which right shall be continuous through the term of this lease as may be extended.

(b) Should the Adjacent Suite become available for lease at any time on or after January 1, 2014, Landlord shall notify Tenant in writing. From the date of receipt of such notice Tenant shall have thirty (30) days in which to give notice of its intention to take the Adjacent Suite. If Tenant fails to timely deliver such notice to Landlord, then Landlord shall be free to market the space to a third party free of this right of Tenant. Tenant's right to expand under this Section 30 shall, however, continue to apply to each subsequent vacancy of the Adjacent Suite.

(c) If Tenant elects to take the Adjacent Suite then the Adjacent Suite shall come under all of the terms and conditions of this Lease and the Demised Premises and Base Rental shall each be adjusted upward to reflect the inclusion of the adjacent Suite based on the additional square feet thereof, however, no commission shall be due TRG in the event Tenant takes the Adjacent Suite.

TRG took possession of the leased premises in March 2013. Reinhart had an office in the suite, and TRG also sublet several offices to other individuals. In 2018, TRG exercised the first five-year renewal option.

It is undisputed that during the lease term, TRG frequently complained to M.G. Realty and its management company about temperatures in the suite, water leaks, plumbing problems, and parking issues. In June 2017, Reinhart learned that M.G. Realty leased the adjacent suite to a third-party without offering TRG the right of first refusal. In July 2021, TRG stopped paying rent. Reinhart testified that in August 2021 he placed the rent payments in an escrow account held by his attorney.

TRG subsequently filed a complaint alleging breach of contract and constructive eviction. In an introductory paragraph to the complaint, TRG succinctly summarized the theory of its case:

This action arises out of the persistent failure of M.G. Realty, as landlord, to repair and maintain the offices that TRG, as tenant, leased from M.G. Realty in Oakland County. Rather than maintain the premises as it agreed to do, M.G. Realty neglected ordinary and required maintenance, leaving the premises unusable in the

winter due to lack of heat and intolerable in the summer due to lack of air conditioning. And M.G. Realty ignored repeated water leaks, directly causing TRG's loss of computer equipment, valuable furniture and fixtures, and unique personal possessions. As a result, TRG has been forced to commence to vacate the premises, losing the expected value of its leasehold interest, which was to be available for an additional six and one-half years and which included the right to expand to the adjoining space. TRG brings this action for damages caused by M.G. Realty's breach of the lease and for what was in effect the constructive eviction of TRG.

TRG sought damages for breach of contract and an award of attorney fees and costs pursuant to ¶ 20.5 of the lease. M.G. Realty filed a counterclaim against TRG seeking unpaid lease payments and late fees totaling $27,490.

At the conclusion of a three-day trial, the jury found that M.G. Realty had materially breached the lease agreement and constructively evicted TRG from the premises. The jury awarded TRG the sum of $123,157, which included $45,486 in damages for the lost opportunity to rent the adjacent suite at below market rates. Because the jury found that M.G. Realty's first material breach of the lease excused TRG from the obligation to pay rent, a judgment of no cause of action was entered on M.G. Realty's counterclaim.

Shortly after trial, TRG filed a motion for attorney fees and costs and a proposed judgment under the seven-day rule of MCR 2.602(B)(3). M.G. Realty objected to the proposed judgment arguing that the judgment should not include an award of attorney fees because this claim was never presented to or decided by the jury. Agreeing with M.G. Realty, the trial court denied TRG's motion for attorney fees and entered judgment in favor of TRG in the amount of $123,157.

In September 2023, TRG claimed an appeal from the judgment and the order denying TRG's motion for attorney fees. The next day, M.G. Realty filed in the circuit court a motion for JNOV. It argued that the evidence was insufficient to support the jury's award of $45,486 as damages for TRG's loss of the opportunity to exercise the right to lease the adjacent suite when that suite became available to rent. The trial court denied M.G. Realty's motion finding that in light of TRG's pending claim of appeal, it lacked jurisdiction to consider the matter.

While M.G. Realty's motion for JNOV was pending in the circuit court, it filed in this Court a claim of cross-appeal and a motion to remand. In its motion, M.G. Realty argued that its motion for JNOV was properly filed and should be initially decided by the trial court. This Court granted the motion to remand. *TRG Advisory LTD v MG Realty LLC*, unpublished order of the Court of Appeals, entered January 8, 2024 (Docket No. 367647). On remand, in its motion for JNOV, M.G. Realty asserted that the jury's award of $45,486 as lost profits was speculative in light of Reinhart's testimony that he was not certain he would have exercised the option to lease the adjacent office suite if he had been given notice that the suite was available to lease in June 2017. The trial court denied M.G. Realty's motion finding that there was sufficient evidence to present the issue to the jury. This appeal and cross-appeal followed.

## II. ATTORNEY FEES

TRG argues that the trial court erred when it denied the posttrial motion for attorney fees. We disagree. Because the trial court's order denying attorney fees was consistent with legal authority, we find TRG's arguments on appeal to be without merit.

Generally, this Court reviews a trial court's decision on a motion for attorney fees for an abuse of discretion. *Pirgu v United Servs Auto Ass'n*, 499 Mich 269, 274; 884 NW2d 257 (2016). An abuse of discretion occurs when the circuit court's decision is "outside the range of reasonable and principled outcomes." *Id*. "A trial court necessarily abuses its discretion when it makes an error of law." *Id*. However, questions involving the proper interpretation of a contract or the legal effect of a contractual clause are reviewed de novo. *Rory v Continental Ins Co*, 473 Mich 457, 464; 703 NW2d 23 (2005). Since this issue involves the interpretation of the attorney fee provision of the parties' lease agreement, this Court's review is de novo.

In support of its posttrial motion for attorney fees, TRG relied upon a provision in the lease which addressed the payment of attorney fees to the prevailing party in the event of an action to recover damages for breach of the lease. The provision states:

> 20.5  If as a result of any breach or default in the performance of any of the provisions of this Lease, either party uses the services of an attorney in order to secure compliance with such provision or recover damages therefor, or to terminate this Lease or evict Tenant from the demised premises, the prevailing party shall be reimbursed by the other party upon demand for any and all reasonable attorneys' fees and expenses so incurred by the prevailing party.

Although the lease agreement allowed for the reimbursement of attorney fees, because TRG did not pursue this claim for damages during the trial, the trial court lacked the authority to award attorney fees under the lease.

"Michigan courts follow the American Rule with respect to the payment of attorney fees and costs." *Pransky v Falcon Group, Inc*, 311 Mich App 164, 193; 874 NW2d 367 (2015). Accordingly, as a general rule, attorney fees are not recoverable as an element of costs or damages absent an express legal exception. *Fleet Business Credit v Krapohl Ford Lincoln Mercury Co*, 274 Mich App 584, 589; 735 NW2d 644 (2007). An exception exists where attorney fees are provided by contract between the parties. *Id*. "Contractual provisions for payment of reasonable attorney fees are judicially enforceable." *Id*., quoting *Central Transp, Inc v Fruehauf Corp*, 139 Mich App 536, 548; 362 NW2d 823 (1984) (quotation marks omitted). However, attorney fees awarded under contractual provisions are considered damages, not costs. *Fleet Business Credit*, 274 Mich App at 589; see also *Pransky*, 311 Mich App at 194. That is, "[i]n order to obtain an award of attorney fees as damages under a contractual provision requiring such a payment, the party seeking payment must sue to enforce the fee-shifting provision, as it would for any other contractual term." *Pransky*, 311 Mich App at 194.

This Court's opinion in *Pransky* is instructive. In that case, the plaintiff sued the defendant to recover a $20,000 retainer and to rescind a consulting agreement. *Id*. at 170. The trial court granted the defendant's motion for summary disposition. *Id*. at 172. Thereafter, the defendant

moved for its costs and attorney fees, as permitted under the consulting agreement. *Id*. The trial court granted the motion and ordered the plaintiff to pay attorney fees to the defendant. *Id*. On appeal, this Court affirmed the lower court's order summarily dismissing the plaintiff's claims. *Id*. at 168. However, it found that the trial court did not have the authority to award the defendant damages, i.e., attorney fees, under the consulting agreement because the defendant did not sue the plaintiff for breach of contract. *Id*. This Court explained:

> Falcon Group did not file a counterclaim for damages under the consulting agreement. Instead, it moved for an award of attorney fees and relied on the consulting agreement as authority for the award. However, because the award of attorney fees was not authorized by statute or court rule, but was instead part of a contractual agreement, the trial court could only award the fees as damages on a claim brought under the contract. By entering an order requiring Pransky to pay Falcon Group's attorney fees, the trial court in effect entered a judgment against Pransky on a claim that was never brought. A trial court may not enter judgment on a claim that was not brought in the original action in the guise of a postjudgment proceeding. See, e.g., *Green v Ziegelman*, 282 Mich App 292, 303-304; 767 NW2d 660 (2009) (holding that the trial court erred when it allowed the plaintiffs to assert a claim for piercing the corporate veil in a postjudgment proceeding because that claim had not been brought in the original action). Therefore, the trial court lacked the authority to order Pransky to pay Falcon Group's attorney fees as damages for breach of the consulting agreement. [*Pransky*, 311 Mich App at 195.]

In this case, unlike the defendant in *Pransky*, TRG did allege in its complaint that it was entitled to attorney fees under the lease; however, it never presented any evidence regarding the amount or reasonableness of the fees, and more importantly, it did not request that the jury assess attorney fees as an element of damages like it did with other alleged damages. The only testimony during the trial related to the attorney fee provision of the lease came from Reinhart and William Cesarek, M.G. Realty's chief financial officer. Both witnesses simply testified about inclusion of the provision in the lease and nothing more. That TRG was obligated to present more than just evidence that the provision existed was clearly recognized by this Court in *Zeeland Farm Servs, Inc v JBL Enterprises, Inc*, 219 Mich App 190, 195; 555 NW2d 733 (1996). In that case, the Court stated, "A party claiming the right to recover attorney fees under a contract must introduce evidence of the reasonableness of the attorney fees to establish a prima facie case and to avoid a directed verdict." *Id*. at 196.

Under the circumstances in this case, had the trial court granted TRG's motion, it would have entered judgment against M.G. Realty on a claim that was never actually pursued or proven at trial. As this Court found in *Pransky*, "a trial court may not enter judgment on a claim that was not brought in the original action in the guise of a postjudgment proceeding." *Pransky*, 311 Mich App at 195. TRG presented its claim for attorney fees to the trial court under procedures for taxing costs rather than as a claim against M.G. Realty under the lease agreement. However, TRG's claim for attorney fees here was simply a claim for damages for breach of contract and should have been treated as any other such claim. See *McManamon v Redford Twp*, 273 Mich App 131, 141; 730 NW2d 757 (2006) (stating "[d]amages are an issue of fact, and questions of fact are, of course, generally decided by the trier of fact . . . .").

TRG argues that it could not prove at trial that it was entitled to attorney fees or the reasonableness of those fees because the fee-shifting provision provided that the parties cannot recover attorney fees until they prevail in the action to enforce the agreement. We see no reason why TRG could not present proofs at trial regarding its entitlement to attorney fees or the reasonableness of those fees unless and until the jury decided that it was the prevailing party. The lease provision limits the entitlement of attorney fees to prevailing parties, but it does not dictate that a party must wait until the trier of fact has determined the issue of liability to present proof of damages. Again, TRG's claim for attorney fees is a claim for damages for breach of contract. Juries routinely consider liability and damages for claims of breach of contract together at trial. TRG also argues that the plain language of the lease provision requires the prevailing party to make a posttrial demand for reimbursement of attorney fees. It does not. TRG complied with the provision's requirement that the prevailing party make a demand for attorney fees by requesting reasonable attorney fees in its complaint; however, it failed to pursue or prove that claim at trial.

TRG finally argues that the trial court erred when it found that TRG had abandoned its claim for attorney fees. We disagree. As noted, TRG did allege that it was entitled to attorney fees under the provisions of the lease. However, it never presented any proofs in this regard and it did not request the jury to assess damages of this nature. TRG's actions clearly suggest an abandonment of the claim. See *Zeeland Farm Servs, Inc*, 219 Mich App at 196 (noting obligation to introduce evidence in support of contractual attorney fees at trial).

## III. JNOV

In its cross-appeal, M.G. Realty argues that the trial court erred when it denied M.G. Realty's motion for JNOV. M.G. Realty only contests the part of the jury's verdict awarding $45,486 in damages for the lost opportunity to lease the adjacent office suite in 2017. M.G. Realty does not challenge the amount of the award. Instead, it asserts that it was entitled to JNOV because the jury had to speculate in order to conclude that TRG would have leased the adjacent suite if the opportunity had been offered. We disagree. Because there was sufficient evidence from which the jury could conclude that TRG would have exercised the option to rent the additional suite, we conclude that the trial court did not err when it denied M.G. Realty's postjudgment motion for JNOV.

This Court reviews de novo a trial court's decision regarding a motion for JNOV. *Morinelli v Provident Life & Accident Ins Co*, 242 Mich App 255, 260; 617 NW2d 777 (2000). In conducting this review, this Court views "the evidence and all legitimate inferences in the light most favorable to the nonmoving party." *Craig ex rel Craig v Oakwood Hosp*, 471 Mich 67, 77; 684 NW2d 296 (2004) (quotation marks and citation omitted). A motion for JNOV should be granted only when there was insufficient evidence presented to create an issue for the jury. *Hecht v Nat'l Heritage Academies, Inc*, 499 Mich 586, 605-606; 886 NW2d 135 (2016). "If reasonable persons, after reviewing the evidence in the light most favorable to the nonmoving party, could honestly reach different conclusions about whether the nonmoving party established his or her claim, then the question is for the jury." *Taylor v Kent Radiology, PC*, 286 Mich App 490, 500; 780 NW2d 900 (2009).

At trial, M.G. Realty's chief financial officer, Cesarek, acknowledged that he simply forgot that the lease gave TRG a right of first refusal for the opportunity to lease the adjacent suite.

Indeed, Cesarek admitted that M.G. Realty breached the contract when, in 2017, it leased the suite to a third-party without affording TRG the opportunity to exercise the right of first refusal. At trial, TRG sought to establish that it was damaged by M.G. Realty's breach because it lost the opportunity to rent the adjacent suite at below market rates.

Damages are an element of a breach-of-contract claim. *Miller-Davis Co v Ahrens Constr*, *Inc*, 495 Mich 161, 178; 848 NW2d 95 (2014). ''The party asserting a breach of contract has the burden of proving its damages with reasonable certainty, and may recover only those damages that are the direct, natural, and proximate result of the breach." *Alan Custom Homes, Inc v Krol*, 256 Mich App 505, 512; 667 NW2d 379 (2003). "[D]amages must not be conjectural or speculative in their nature, or dependent upon the chances of business or other contingencies . . . ." *Doe v Henry Ford Health Sys*, 308 Mich App 592, 602; 865 NW2d 915 (2014) (quotation marks and citation omitted). Considering the evidence and all reasonable inferences drawn in a light most favorable to TRG, the jury could have reasonably concluded that if offered, TRG would have exercised its right of first refusal, and thereafter leased the adjacent suite.

Reinhart testified that when negotiating the 2013 lease, it was very important to him to have the option to expand into the adjacent suite. Reinhart explained that expanding into the adjoining suite was of "great value to [him], to [his] company, and to [TRG's] business plan." Indeed, if he had not been able to successfully negotiate the expansion right, he would not have entered into the lease. Reinhart was questioned on both direct examination and cross-examination about the opportunity that was never actually offered to him. On direct examination, Reinhart initially testified:

> *Q*. So would you be in a position to know what you would do if you were never given the option to decide?
>
> *A*. Well, I had 30 days, so it would send me into a process. I would—I would contact people that I knew in the Birmingham community. Again, our business model is collaboration with other professionals, and so even if I had people paying rent on a subtenant basis, they're kind of their own independent contractor, if you will, and if we're all under the same roof, you have the exchange of ideas, et cetera, and you have the ability to—you know, to collaborate. So that was part of the reason I took this space to begin with. The reason—one of the reasons I tied this space up for 15 years, it was my business plan, and so if given that, I would have taken those 30 days, I'm a pretty good businessman, I have a lot of contacts, probably in all likelihood I would have found some people that would have been intrigued by the idea of working under the same roof together.
>
> So I never even engaged any energy in that because I was never given the notice, and so who knows, as I sit here today, what would have happened. I mean it could have been one phone call, two phone calls, ten phone calls, and I—you know, it—its—it may have happened and it's conceivable it may not have happened.

Reinhart further testified:

-7-

*Q.* . . . [B]ut did you ever communicate to him that you wouldn't exercise your right, or you weren't sure?

*A.* I—it's probably—it would be an honest answer for me to say yeah, I'm not sure, let me—you know, I'd have to have the time to look at it.

Although Reinhart's initial testimony was fairly equivocal, he never testified that he would not have leased the adjacent suite. Instead, he seemed to focus more on the lost opportunity to even contemplate the option.

In any event, later in his testimony, Reinhart, on cross-examination, clearly testified that, more likely than not, he would have exercised the option to lease the adjacent suite:

*Q.* And yesterday you said you may have or you may not have exercised that option had you had the opportunity.

*A.* Based on when it came up, and where the economy was at that point in time, I think it was probably more likely than not, that I would have. Just because all the people that I know that are in the Birmingham community—again, the way the commercial real estate business—there's different models. Some people just build large corporations and they carry all that overhead.

But there's also a lot of people that just collaborate, and the best way that you make things happen is by being in close proximity to one another. Even though you're not taking on each other's financial responsibility, you're all independent contractors, the more you can put people under one roof, the more there's an opportunity that this guy finds a deal, or this person does and they don't quite have enough capital to make it happen, or they need someone with tax expertise, or here's something that's in foreclosure, or we're trying to buy this asset out of bankruptcy.

When you have this collegiality that occurs, I mean it really does produce results. So that was my business model, was the whole reason that I took this space to begin with, was to have the flexibility to be able to put these people together and make that happen, that we have the flexibility within our existing space. The beauty of the additional space is, rather than try to pick one or two people to come into the office, I could have some—

Reinhart clearly testified that he would have leased the additional space and he gave a credible basis for why he would have taken this action. From this testimony, the jury could have drawn the reasonable inference that had M.G. Realty complied with the terms of the lease, TRG would have leased the additional office space.

The testimony of TRG's expert witness, real estate appraiser Drew Schmidt, also supported a finding that had the expansion option been offered, TRG would have exercised the option and leased the adjacent suite. Schmidt testified that the expansion option would have permitted TRG to lease the additional space well below market value. Schmidt also testified that TRG's business

model, which included bringing professionals together under one roof to collaborate, was a viable plan. He noted that historically, TRG had successfully sublet its existing space for most of the lease term. Schmidt was confident that TRG would have sublet the additional office space. He testified:

> *Q*. Well, isn't that important to know before you opine that it's going to be full all the time?
>
> *A*. Well, it's a 6 percent vacant market, which suggests that you're going to fill the space. He has a record of subletting to tenants. That business model is a well-known successful working business model. It's called lease up. It's certainly conceivable and expected that he could lease up the space. We look at lease up all the time. Lease up occurs all the time in every building there is. When someone moves out, you have to lease up the space. If it's empty, it's not going to be empty forever.

From the foregoing testimony, the jury could have reasonably concluded that TRG would have exercised the option because, based on Schmidt's testimony, it would have been a successful business venture.

Viewing the evidence in the light most favorable to TRG, the nonmoving party, reasonable inferences would permit the jury to find that had M.G. Realty complied with the lease terms and offered TRG the right of first refusal, TRG would have exercised the option and leased the additional office space. The jury's verdict does not evidence that it engaged in speculation when awarding damages for the lost opportunity to rent the adjacent suite below market value. Reinhart explained why it was important for the success of his business to acquire additional office space. He also ultimately and clearly testified that given the opportunity, he would have likely exercised the right of first refusal and leased the additional office space. His testimony was bolstered by the opinion of expert witness Schmidt. Ultimately, there was sufficient evidence to permit the jury to resolve the question of fact regarding whether TRG would have leased the adjacent suite. "[U]nless a plaintiff's case is wholly lacking evidence on an element of a claim, the jury is allowed to make reasonable inferences from the evidence and make credibility determinations." *Hecht*, 499 Mich at 606 n 29. Accordingly, the trial court did not err when it denied M.G. Realty's motion for JNOV.

Affirmed.

/s/ Thomas C. Cameron
/s/ James Robert Redford
/s/ Kristina Robinson Garrett